**PIEDMONT HEIGHTS CIVIC CLUB, INC., et al., Plaintiffs-Appellants,**

v.

**Thomas D. MORELAND et al., Defendants-Appellees.**

No. 80–7414.

United States Court of Appeals, Fifth Circuit. Unit B

Feb. 20, 1981.

432

John R. Myer, Edgar A. Neely, Jr., Atlanta, Ga., for plaintiffs-appellants.

Anne S. Rampacek, Peter Kontio, Sidney O. Smith, Jr., Atlanta, Ga., for Central Atlanta Progress, Inc., et al., amicus curiae.

William L. Harper, U. S. Atty., Curtis Anderson, Robert J. Castellani, Asst. U. S. Attys., Arthur K. Bolton, Atty. Gen., Roland F. Matson, Asst. Atty. Gen., Robert S. Stubbs, II, Executive Asst. Atty. Gen., Don

A. Langham, First Asst. Atty. Gen., Marion O. Gordon, William D. Mallard, Jr., Sp. Asst. Attys. Gen., Atlanta, Ga., Kenneth N. Weinstein, U. S. Dept. of Transp., Washington, D. C., for defendants-appellees.

Before MORGAN, ANDERSON and THOMAS A. CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

The primary issue in this appeal is whether the district judge abused his discretion in denying the plaintiffs' motion for a preliminary injunction. We hold that the judge acted within his discretion in finding that the plaintiffs had not demonstrated a likelihood of success on the merits and that the harm to the plaintiffs was outweighed by the harm to the defendants and the public interest. We therefore affirm the decision of the district court in favor of the defendants.

Plaintiffs-appellants in this appeal (hereinafter referred to as "plaintiffs") are two civic associations, Piedmont Heights Civic Club, Inc. and Atlanta Coalition on the Transportation Crisis, Inc., and four individuals that brought this action in the United States District Court for the Northern District of Georgia against the Georgia Department of Transportation and its Commissioner of Transportation (hereinafter referred to as "State defendants") as well as the United States Department of Transportation, the Secretary of Transportation, the Federal Highway Administration, and the Federal Highway Administrator (hereinafter referred to as Federal defendants"). Plaintiffs sought to enjoin construction of several projects to widen interstate high-ways in and around Atlanta, Georgia, claiming *inter alia*[1] that Federal defendants had not complied with the requirements of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. §§ 4321 *et seq.*[2]

Plaintiffs filed their original complaint on May 30, 1979, challenging the adequacy of the Final Environmental Impact Statements ("EISs") approved for three segments of highway improvements: (1) the Downtown Connector (that segment of the highway where I–75 and I–85 become one highway from Williams Street running north to the Brookwood interchange), (2) Brookwood (that segment of the highway where I–75 and I–85 join, running north on I–85 to Lenox Road), and (3) DeKalb I–85 (that segment of I–85 running north of Lenox Road to I–285, the perimeter expressway). The district court held evidentiary hearings to determine whether to grant a preliminary injunction and afterwards the parties filed supplemental briefs. While awaiting decision plaintiffs filed three renewed motions to enjoin specific actions of the defendants. None of these motions were granted. On May 23, 1980, almost a year after the filing of the original complaint, the district judge denied plaintiffs' original motion for preliminary injunction on the grounds that plaintiffs had "failed to demonstrate a strong likelihood that they [would] prevail on the merits" and any harm to the plaintiffs was "outweighed by the harm done to the defendants as well as the public interest." The district court denied plaintiffs' motion for a stay pending appeal, and this court affirmed that denial but granted an expedited appeal.[3]

---

1. Plaintiffs also challenge the highway improvements under the Federal-Aid Highway Act, 23 U.S.C. § 101 *et seq.*, the Parklands Statute, 23 U.S.C. § 138; the Rivers and Harbors Act of 1899, 33 U.S.C. § 403; the Federal Water Pollution Control Act, 33 U.S.C. § 1344; the Administrative Procedure Act, 5 U.S.C. § 706(2), and regulations promulgated thereunder. This appeal, however, is based only on the denial of the preliminary injunction under the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq.*

2. For the convenience of the reader, a list of acronyms commonly used in this case is provided in Appendix A.

3. At oral argument plaintiffs moved for a stay pending decision in the case, but this court denied that motion on October 14, 1980.

## I.

The projects challenged in this case are three of seven projects currently planned by the State and Federal defendants to alleviate the serious traffic problems in Atlanta, Georgia, and prepare for transportation needs of the future. The existing highway system in Atlanta includes two intersecting north-south expressways that form an hourglass configuration through the city. Interstate 75 (I–75) runs northwest to southeast through the metropolitan area and Interstate 85 (I–85) runs northeast to southwest. This highway configuration along with most of the two-county area of Atlanta is encircled by a perimeter highway, Interstate 285 (I–285). Within the perimeter near the downtown business district, I–75 and I–85 converge and continue as one highway for several miles. This section of the interstate highway system within Atlanta is commonly referred to as the Downtown Connector.[4]

The first highway improvement project, the Downtown Connector Improvements Plan, was approved by the Federal Highway Administration ("FHWA") in September of 1971. This plan included the widening from six lanes to eight lanes of the Downtown Connector where I–75 and I–85 are one highway. Construction on this highway segment was temporarily delayed, however, because of a regional planning process which was about to commence. This planning process was required by 23 U.S.C. § 134 and other federal statutes and regulations pertaining to urban transportation in order to receive federal funding for specific transportation projects. The purpose was to develop plans and programs for transportation needs with a view toward comprehensive long-range plans. The planning process was undertaken by the Atlanta Regional Commission ("ARC") as the Governor's designated Metropolitan Planning Organization ("MPO").[5] In 1975 the ARC issued its Regional Development Plan ("RDP"), a system plan which identified, among other things, the transportation needs for the Atlanta area through the year 2000. The identified needs included an extensive mass transit system, new highways, and several highway widenings, including the ones at issue in this case. The ARC also prepared a Transportation Improvements Program which indicated the priority of needs for the near future and projects for the following year.

Based on the recommendations in the RDP the State defendants proposed improvements for the Brookwood Interchange, the highway section where I–85 and I–75 merge north of the Downtown Connector, and in 1975 a Draft EIS for the Brookwood Improvement Plan was circulated and approved. This project included redesigning the Brookwood Interchange and building a six-lane expressway (actually eight lanes in width) running north to Lenox Road parallel with the existing four-lane expressway. In the following year the

---

4. For an illustration of the highway system and the proposed construction in Atlanta, see the map at Appendix B.

5. Regulations promulgated by the Federal Highway Administration (FHWA) and the Urban Mass Transit Administration (UMTA) to implement the provisions of the Federal-Aid Highways Act, 23 U.S.C. § 101 *et seq.*, and the Urban Mass Transportation Act, 49 U.S.C. § 1601 *et seq.*, require the Governor of each state to designate an MPO to serve in each urban area in the state as the planning agency for the area. 23 C.F.R. § 450.106 (1980). This agency must cooperate with any public transportation systems in planning for the transportation needs of the area and must develop a system plan for both short and long-term goals. 23 C.F.R. §§ 450.108(c), 450.116. The regulations further require development of a trans-portation improvement program (TIP), which identifies the transportation needs for the next three to five years in order of priority and lists projects proposed for the next year. 23 C.F.R. §§ 450.118, 450.306, 450.308, Part 450, subpart C. If a project is listed in the TIP and the area's planning process has been certified by a "3C" (continuing, cooperative, comprehensive) Certification of the FHWA and UMTA, the project may be eligible for federal funds. Certification, however, includes review only of the planning process itself and not of the substantive merits of the proposal. For a full discussion of the regulations governing the urban transportation planning process, see *Atlanta Coalition on the Transp. Crisis, Inc. v. Atlanta Regional Commission,* 599 F.2d 1333, 1338–40 (5th Cir. 1979).

State defendants proposed the widening from four to eight lanes of DeKalb I–85 north of Lenox Road to I–285, the perimeter expressway. A Draft EIS was circulated and approved. In 1977 the State defendants proposed certain changes in the project design of the Downtown Connector which included adding two high occupancy vehicle (HOV) lanes to the already approved eight-lane highway. After reviewing the State defendants' comprehensive reevaluations of the project with these changes, the FHWA approved the project, finding no significant changes in the social, economic and environmental effects that would require the preparation of a supplemental EIS. Final EISs for both the Brookwood Improvement Plan and the DeKalb I–85 Improvement Plan were approved by the Secretary of Transportation in 1978, and this lawsuit was brought in May of the following year.

## II.

 The standard to be applied by this court on the appeal of the denial of a preliminary injunction is abuse of discretion. *Vision Center v. Opticks, Inc.*, 596 F.2d 111 (5th Cir. 1979). The district judge's decision should be considered in light of the four factors required for the granting of a preliminary injunction as set out in *Canal Authority v. Callaway*, 489 F.2d 567 (5th Cir. 1974). The four requirements are: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to plaintiff must outweigh the threatened harm the injunction may do to defendant, and (4) granting the preliminary injunction will not disserve the public interest. *Id.* at 572. The plaintiff bears the burden of persuasion on all four factors in order to be entitled to the extraordinary relief of a preliminary injunction. In the case at bar the issue of likelihood of success on the merits is particularly significant[6] and thus will be considered first. The primary issues on the merits are whether the rapid transit system should have been considered as an alternative in the EIS and whether the highway improvement plans were improperly segmented to avoid adequate consideration of environmental effects.

### A. *Alternatives.*

 Plaintiffs challenge the adequacy of the EISs for the Brookwood Improvements Plan and the Downtown Connector Improvements Plan[7] on the ground that the statements did not consider the Metropolitan Atlanta Rapid Transit Authority (MARTA) rail system as an alternative to the highway expansion. Section 102(2)(C)(iii) of NEPA[8] requires a federal agency in assessing the environmental effects of a project to discuss alternatives to the pro-

---

**6.** Plaintiffs have suggested in their briefs and in oral argument that this case should be decided on appeal "as if" on the merits because no more evidence will be offered at trial on the merits of the NEPA claims argued in support of the motion for preliminary injunction. Although the court may have the power to consider a preliminary injunction appeal "as if" on the merits, we refuse to do so in this case relying on language in *De Giorgio v. Causey*, 488 F.2d 527 (5th Cir. 1973), "that an appeal from the issuance or denial of a preliminary injunction is ordinarily no way to obtain appellate disposition of a case on its merits...." *Id.* at 528. In this case the district judge clearly considered his order as a decision on the preliminary injunction motion and not a final order. Order, R. 1225. Furthermore, at oral argument defendants stated that plaintiffs refused to agree after trial to consolidate the appeal with an appeal on the merits. Therefore we do not consider this case strictly on the merits except insofar as the first element of a preliminary injunction requires consideration of the merits to determine if the trial judge abused his discretion in denying the injunction. The merits of the case are an important factor under *Canal Authority, supra*, however, and therefore deserve extensive discussion.

**7.** Although plaintiffs initially brought this challenge against the Brookwood, Downtown Connector, and DeKalb I–85 Improvement Plans, plaintiffs conceded in their brief and at oral argument that construction on the DeKalb I–85 Improvements has now proceeded to a point that it would be inappropriate to enjoin further construction of the I–85 segment. Therefore consideration of the DeKalb I–85 EIS is irrelevant to the alternative issue.

**8.** 42 U.S.C. § 4332(2)(C)(iii).

posed action. The purpose of the alternatives requirement is to assure that the government agency as a decision-making body has considered methods of achieving the desired goal other than the proposed action. *Sierra Club v. Morton*, 510 F.2d 813, 815 (5th Cir. 1975). Consideration of other realistic possibilities for action forces an agency to consider the environmental effects of a project and evaluate those effects against the effects of alternatives. NEPA, however, fails to specify what "alternatives" must be considered. The concept is limited by federal regulation to reasonable alternatives, and requires consideration only of feasible, non-speculative alternatives. 23 C.F.R. § 771.81(j) (1980). *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 551, 98 S.Ct. 1197, 1215, 55 L.Ed.2d 460 (1978); *Natural Resources Defense Council, Inc. v. Morton*, 458 F.2d 827 (D.C. Cir. 1971); *Inman Park Restoration, Inc. v. Urban Mass Transportation Administration*, 414 F.Supp. 99 (N.D. Ga. 1976), *aff'd sub nom., Save Our Sycamore v. MARTA*, 576 F.2d 573 (5th Cir. 1978). Courts have recognized that an EIS cannot be held to be a standard of perfection. *Environmental Defense Fund v. Corps of Engineers*, 470 F.2d 289, 297 (8th Cir.), *cert. denied*, 412 U.S. 931, 93 S.Ct. 2749, 37 L.Ed.2d 160 (1972); *Inman Park Restoration, Inc., supra*, 414 F.Supp. at 113. Although the procedural requirements of NEPA must be satisfied, the courts will require only the "statutory minima," refusing to substitute their judgment for the judgment of the administrative agencies charged with satisfying the requirements of NEPA. *See Vermont Yankee Nuclear Power Corp., supra*, 435 U.S. at 548, 555, 98 S.Ct. at 1214, 1217.

According to federal regulations, examples of alternatives that may be considered in an EIS include "alternate locations and designs, not implementing the proposed action, postponing the action, providing a lower level of service, providing a reduced facility (lanes/design), and an increase or decrease in public transportation." 23 C.F.R. § 771.18(j) (1980). In addition, the Council on Environmental Quality guidelines cite mass transit as an example of the kind of alternative that should be considered in an EIS prepared for a highway construction project. 40 C.F.R. § 1500.8 (1980). These examples, although important for agency guidance, are not mandates applicable to every situation. The degree to which an alternative should be considered, or indeed whether an alternative should be considered at all, varies with the existing circumstances. In *Vermont Yankee Nuclear Power Corp., supra*, 435 U.S. at 552, 98 S.Ct. at 1216, the Court noted that "the concept of 'alternatives' is an evolving one." Development of the situation or of the alternative itself may affect the degree to which the alternative should be considered. Where a mass transit system is already planned and approved, the highway agency need not consider mass transit as a formal alternative under section 102(2)(C)(iii). At that point mass transit is not an alternative that must be specifically considered, but it is a given factor in the environment of the highway project proposal. The agency should consider mass transit not as an "alternative," but rather the agency should consider the need for the highway improvements in light of the existing plans for mass transit. Although this consideration may be made under a specific heading in the EIS, such a requirement will not be imposed on the highway agency by this court. As long as the "statutory minima" is satisfied, NEPA requires only that the agency take a "hard look" with "good faith objectivity" at the environmental consequences of a particular action. *Inman Park Restoration, Inc., supra*, 414 F.Supp. at 113.[9]

---

9. Plaintiffs have emphasized that the Assistant Secretary of Transportation recommended in his comments that the State defendants "fully evaluate" the transit alternative and the effect of the highway improvements on MARTA ridership. Although comments to a Draft EIS may direct an agency to consider an alternative, NEPA does not require an agency to consider every alternative suggested by comment. *See National Resources Defense Council, Inc. v. Morton, supra*, 458 F.2d at 837–838. Comments by a reviewing agency of the state or

■ Based on the foregoing analysis the court below was correct in finding that the State defendants were not required to consider MARTA as an alternative to the highway construction. The district judge found that MARTA was not considered as a specific alternative to the highway improvements, but NEPA does not require a specific discussion in this situation. As the judge found, MARTA is a certainty in Atlanta and therefore "part of the background upon which the decision of whether these projects are environmentally justified is premised." The proper consideration for the highway agency was not whether to expand the highway or build mass transit, but rather the issue for consideration by the agency was whether the highway improvements were necessary in light of the existing reality of planned, and to a certain extent funded, MARTA construction. Having concluded that the State defendants satisfied the procedural requirement of section 102(2)(C)(iii), the question remaining to be resolved is whether the highway agency adequately considered the need for the highway improvements in light of MARTA.[10]

Consideration of such a factor as the effect of MARTA on the need for highway improvements may be evidenced in an EIS in a variety of ways. The district judge below found that the alternative of MARTA "amounted to the 'no build' alternative." In support of this position he relied on the Eighth Circuit's recent opinion in *Farmland Preservation Ass'n v. Goldschmidt,* 611 F.2d 233 (8th Cir. 1980). In that

case the court rejected claims that the "no action" alternative was inadequately discussed and that another alternative should have been discussed. In the case at bar we have rejected the plaintiffs' claims that MARTA should have been discussed as an alternative to the highway improvements. Likewise we hold that the district judge below did not abuse his discretion in finding that the MARTA alternative "amounted to the 'no build' alternative." The idea implicit within that finding is that the State defendants considered a "no build" option with the knowledge that MARTA was a certainty in Atlanta, and even so, concluded that the highway improvements were necessary to meet the transportation needs of the city. Although an explicit discussion stating these conclusions might have been instructive to reviewers of the EIS, the district court did not abuse its discretion in not requiring such a discussion.

Whether or not explicitly considered in the "no build" alternative, the record before this court reveals that the plans for MARTA were considered from the beginning of the decision-making process. The State defendants considered both of the transportation improvements in Atlanta as complementary and necessary to meet the present and future transportation needs of the city. In the Final Brookwood EIS in response to comments concerning the effects of the highway improvements on MARTA, the State defendants stated their position, relying on the Regional Development Plan adopted by the ARC:

federal government directing consideration of certain factors are considered by a reviewing court, but such comments are not determinative of whether the factors indeed should have been discussed. *See Movement Against Destruction v. Volpe,* 361 F.Supp. 1360, 1389 (D.Md.1971), aff'd. 500 F.2d 29 (4th Cir. 1973). The federal regulations permit the agency after considering the comment and choosing not to follow it to respond by explaining why the comment does not warrant further agency action. 40 C.F.R. § 1503.4(a)(5) (1979). In this case the State defendants responded to the comment by indicating their reliance on traffic models that included the MARTA transit system. In light of the fact that the agency assumed MARTA's existence from the beginning

of its planning process, this response was sufficient. Furthermore, the final approval of the EIS by the Secretary of Transportation suggests the Secretary's satisfaction with the response.

10. Plaintiffs have not specifically challenged the adequacy of the alternatives actually discussed in the EISs, apparently relying on their position that MARTA should have been discussed as a separate alternative. However, their challenge based on the failure to consider MARTA is sufficiently broad to require this court to inquire into the issue of whether MARTA was in fact considered by the highway agency.

The adopted Regional Development Plan (RDP) includes all projects in the approved transportation plan, including the Brookwood Station Area Improvements, implementation of a 100-mile MARTA fixed rail system, as well as a five-county feeder bus system, utilized to capacity. The Department's proposal is not presented as an alternative to utilization of the MARTA system, but is intended to complement the system, thus providing Atlanta with a balanced multi-modal transportation system.

Brookwood Station Area Improvements, Final EIS, App. p. 137. As indicated, the RDP recommended both highway improvements and mass transit. Both the Brookwood Improvements EIS and the I-85 Improvements EIS discussed the need for the projects in terms of the recommendations of the RDP. According to both the Draft and Final Brookwood EISs (and the Final I-85 EIS), the recommendations for all transportation improvements were based on traffic models that assumed the existence of a rapid rail system. Draft Brookwood EIS, App. pp. 43-44; Final Brookwood EIS, App. p. 68; Final I-85 EIS, pp. 4-5. The various EISs contained other references to MARTA which indicate that the existence of rapid transit was implicitly considered throughout the planning process. Therefore the record adequately reveals that the highway agencies satisfied their obligations under NEPA.

Plaintiffs suggest that the refusal of the district court to require consideration of the MARTA system in the highway improvement EISs creates a "catch-22" when considered in light of this court's holding in *Atlanta Coalition on the Transportation Crisis, Inc. v. Atlanta Regional Commission*, 599 F.2d 1333 (5th Cir. 1979). In that case the court held that NEPA did not require an EIS on the Regional Development Plan adopted by the ARC, at least until an element of the plan ripened into a concrete "proposal for major federal action." The plaintiffs' position is that the holding of *ACTC v. ARC, supra*, and the holding of the district court below result in a situation where the environmental effects of the overall transportation plan will never be considered. It is true that the regional plan adopted pursuant to the regional planning process is not subject to an EIS evaluation. However, each element of the plan when proposed will be subject to such analysis, and as we have held, the analysis at that time should take into consideration any prior approved projects which affect the environment as part of the existing background of the proposal. *See Kleppe v. Sierra Club*, 427 U.S. 390, n. 20, 96 S.Ct. 2718, n. 20, 49 L.Ed.2d 576 (1976). This approach avoids plaintiffs' "catch-22" but does not require a rehashing by state or federal officials of the planning process that has occurred previously pursuant to federal law.

Plaintiffs further argue, citing *inter alia*, *Grazing Fields Farm v. Goldschmidt*, 626 F.2d 1068 (1st Cir. 1980), that materials contained in the administrative record but not contained in the EIS cannot bring an inadequate EIS into compliance with NEPA. The gist of this argument is that information contained in the RDP supporting the position that both MARTA and the highway improvements are necessary cannot be used by the State defendants to justify their refusal to discuss MARTA explicitly in the EIS. The precise holding of the First Circuit Court, however, referred to studies "not incorporated in any way into an EIS." The court was concerned in that case about studies made subsequent to an EIS which were not available for circulation at the time of EIS approval. In the case at bar the Draft and Final EISs of both the Brookwood and I-85 Improvements referred to the RDP as the underlying source of recommendation for the highway improvements. Although the reports were not circulated with the EIS, they were readily available to the public. The State defendants were not required to reiterate facts and figures contained in the RDP justifying the need for both mass transit and highway improvements. The reference to the RDP contained in the Brookwood and DeKalb I-85 EISs was sufficient to satisfy the procedural and substantive requirements of NEPA.

In *Movement Against Destruction v. Volpe*, 361 F.Supp. 1360 (D.Md.1971), *aff'd*, 500 F.2d 29 (4th Cir. 1973), the court faced a problem involving facts similar to the ones in the case at bar. Pursuant to recommendations resulting from an extensive planning process, the federal highway agency proposed the building of an interstate segment, Interstate 170, and prepared an EIS on the project. The EIS did not consider existing plans for mass transit and was challenged on that ground and others. The court refused to require the consideration of mass transit as an alternative, relying primarily on the fact that mass transit was not yet a certainty in the transportation corridor in question. The court further found, however, that no evidence had been introduced to show that mass transit, if built, would be alone sufficient to meet the traffic demands. Substantial evidence of the need for both transportation systems existed in the plans and recommendations introduced as exhibits. The court properly concluded that no violation of NEPA occurred from the failure of the agency to consider mass transit as an alternative or extensively discuss the matter as the no-build alternative. Although the case at bar is not a decision on the merits, the factual similarity of the cases suggests a similar result.

In addition to the MARTA alternative, plaintiffs have argued that the alternatives of postponement and reduced facilities should have been considered in the EISs.[11] Both of these suggestions are related to the MARTA claim in that the plaintiffs desire "postponement" until after MARTA is completed and "reduced facilities" because of MARTA's effect on transportation. The court below did not abuse its discretion in finding that the postponement alternative was unreasonable because of the current traffic situation in Atlanta of overly-crowded expressways. The district judge further found that "reduced facilities" were considered as alternatives by the highway agency. This finding is not clearly erroneous as the EISs evidence consideration of

six-lane, eight-lane, and no-build alternatives. Therefore, on the issue of inadequate consideration of alternatives, we hold that the district judge did not abuse his discretion in finding that the suggested alternatives were adequately considered in the EISs under review.

### B. *Segmentation*

In another primary attack plaintiffs allege an improper segmentation of the highway projects. As a general rule under NEPA, segmentation of highway projects is improper for purposes of preparing environmental impact statements. *See, e. g., Sierra Club v. Callaway*, 499 F.2d 982 (5th Cir. 1974). However, the rule against segmentation is not required to be applied in every situation. To determine the appropriate scope for an EIS courts have considered such factors as whether the proposed segment (1) has logical termini, (2) has substantial independent utility, (3) does not foreclose the opportunity to consider alternatives, and (4) does not irretrievably commit federal funds for closely related projects. *See Swain v. Brinegar*, 542 F.2d 364 (7th Cir. 1976); *Trout Unlimited v. Morton*, 509 F.2d 1276 (9th Cir. 1974); *Indian Lookout Alliance v. Volpe*, 484 F.2d 11 (8th Cir. 1973); *Named Individual Members of San Antonio Conversation Society v. Texas State Highway Dept.*, 446 F.2d 1013 (5th Cir. 1971). The Fifth Circuit has considered several factors including the independent utility of the project and the interdependence of several projects. *See Save Our Sycamore v. MARTA*, 576 F.2d 573 (5th Cir. 1978); *Sierra Club v. Callaway, supra,* 499 F.2d 982. Considering these factors we hold that the district court did not abuse its discretion in finding that the plaintiffs did not prove the likelihood of success on the merits of the segmentation issue.

Plaintiffs on appeal have argued that the district judge erred in his determination that improper segmentation had not occurred because he relied on the

---

11. Both of these suggested alternatives are listed in the federal regulations as appropriate considerations. *See* 23 C.F.R. § 771.18(j) (1980).

"post hoc rationalizations" of the state employee responsible for preparing the EISs. Plaintiffs, however, do not indicate any authority, and this court has not found any authority, requiring an EIS to explicitly discuss the factors that determine the scope of the EIS. Plaintiffs cite several cases which stand for the proposition that an EIS should "fully disclose" and document any factors bearing on the ultimate decision of the agency. This court certainly agrees with that general proposition, but recognizes that every conceivable detail of every possible challenge to the decision cannot be anticipated in an EIS. *See Vermont Yankee, supra*, 435 U.S. at 551, 98 S.Ct. at 1215. The concern about "post hoc rationalizations" is a concern that an agency decision will be made without regard to environmental affects and afterwards the agency will attempt to justify its decision. When action is initially planned by an independent planning agency and projects are later proposed at separate times by the government agency, the reasons offered by the agency for proceeding in this manner are not necessarily "post hoc rationalizations." As in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 420–21, 91 S.Ct. 814, 826, 28 L.Ed.2d 136 (1971), the decision-makers in the agency may explain their actions through testimony where the administrative record is inadequate to make a determination as to what factors influence the agency's decision on underlying matters. A court may consider this testimony to determine whether the project was improperly segmented. Thus, the district court's reliance on testimony at the hearing below was proper to determine whether the projects had logical termini, independent utility, or necessarily committed the federal government to the construction of other projects.

A crucial inquiry necessary to determine whether transportation projects have been improperly segmented is whether the projects have independent utility. The rule against segmentation developed in order to prevent environmental consideration of segments of highways in isolation of one another. Apparently an inquiry into independent utility reveals whether the project is indeed a separate project, justifying the consideration of the environmental effects of that project alone. Several of the cases have turned on the question of whether the projects have logical termini, particularly where the project is a highway project to be built between two major cities. *See Swain v. Brinegar, supra*, 542 F.2d 364; *Indian Lookout Alliance v. Volpe, supra*, 484 F.2d 11. In these cases because the function of the highway was to provide access between cities, the court determined that segments shorter than the full length of the highway had no independent purpose and required an EIS of longer lengths. In a case such as the case at bar where the highway segments in question are not running between cities, but rather running through one city, logical termini are not so easily determined by a court. The more important inquiry in such a situation is whether the projects have independent utility. In *Inman Park Restoration, Inc. v. Urban Mass Transportation Administration, supra*, 414 F.Supp. 99, the court focused on the question of independent utility when faced with a challenge seeking separate EISs for the individual rapid transit stations on the MARTA rail line. The court held that separate EISs were not required, and further indicated that separate EISs on the rapid transit stations would not have been adequate. The overall EIS that had been prepared for the entire 53-mile MARTA transit system was necessary and sufficient because the individual transit stations did not have a purpose independent of the rail system. Based on the analysis of *Inman Park Restoration, Inc.*, but contrary to the holding in that case, we hold that the district judge below did not abuse his discretion in finding that the individual highway segments in the case at bar have a substantial independent utility justifying the separation of the projects. The district judge found that each highway segment can serve its transportation purpose whether or not the other projects are built. The Downtown Connector project should relieve the traffic congestion that exists where I–75 and I–85 converge and

continue as one highway in the downtown central business district. The Brookwood Interchange project will alleviate the congestion where the two highways meet, and the DeKalb I–85 segment should help the traffic flow from the heavily populated northeast corridor of Atlanta. The projects, although interrelated as part of an overall transportation plan, should individually contribute to alleviation of the traffic problems in Atlanta, and are therefore not improperly segmented as separate projects. Furthermore, because of the independent utility of the projects, approval of each project does not irretrievably commit future resources or limit alternatives available to the transportation agencies.

In *Movement Against Destruction v. Volpe, supra,* 361 F.Supp. 1360, the district court faced the issue of segmentation concerning highway projects in and around the city of Baltimore. In that case the plaintiffs challenged the failure of the highway agency to prepare an overall EIS. The plaintiffs attempted to prove that the projects were in reality one major project, relying primarily on a letter from the federal highway administrator that approved several highway projects based on an overall transportation plan known as the 3–A system. Under these circumstances the court held that there was no "major federal action" requiring an EIS for the entire scheme. As in the case at bar, the projects were separately proposed to accomplish independent purposes and only appeared to be part of an overall plan because they were included in earlier transportation plans for the area. A regional transportation plan prepared by independent planners outside the highway agency does not require an EIS because the plan is not a proposal for major federal action. *Atlanta Council on the Transportation Crisis, supra,* 599 F.2d 1333. Even though individual highway projects are proposed pursuant to a planning scheme, NEPA does not require a programmatic EIS for the entire plan at the time the individual projects are proposed.

In a related claim plaintiffs rely on language in the Supreme Court's opinion in *Kleppe v. Sierra Club,* 427 U.S. 390, 96 S.Ct. 2718, 49 L.Ed.2d 576 (1976), to support their argument that the cumulative effect of the separate highway projects and MARTA construction requires an overall EIS to consider the environmental consequences. In *Kleppe* the Court held that the several coal-mining projects in the Northern Great Plains region did not require a comprehensive EIS because there was no proposal for region-wide action. Plaintiffs cite, however, language in footnote 20 of *Kleppe,* which provides in pertinent part:

> Should contemplated actions later reach the stage of actual proposals, impact statements on them will take into account the effect of their approval upon the existing environment; and the condition of that environment presumably will reflect earlier proposed actions and their effects.

*Id.* at 410, n. 20, 96 S.Ct. at 2730, n.20. Plaintiffs' argument here is another attempt to require consideration of MARTA along with the cumulative effects of the three highway projects themselves in the highway project EISs. Again plaintiffs' argument must fail. Although a full and explicit discussion of these cumulative environmental effects may have been helpful, case law under NEPA requires only that an agency comply with the "statutory minima." *Vermont Yankee Nuclear Power Corp., supra,* 435 U.S. at 548, 98 S.Ct. at 1214. The district court below was correct in finding that the Supreme Court's statement in footnote 20 was not an explicit command, but rather a restatement of the responsibilities under NEPA. As with the alternatives issue, proposals for projects and approved projects that are pending at the time of another proposal should be considered as part of the environmental background against which a decision should be made. However, NEPA does not require an agency to restate all of the environmental effects of other projects presently under consideration. Where the underlying data base includes approved projects and pending proposals, the "statutory minima" of NEPA has been met. In the case at bar the underlying data base included effects from

the other pending highway and MARTA proposals. This data was used to determine the traffic, air, and noise quality that would exist as a result of the highway projects. Although another approach of considering the cumulative environmental effects of the projects could have been used, it was not unreasonable for the agency to use their approach of considering the other proposals through the underlying data base. Because it is clear from the record that the cumulative effects of the prior proposals were considered by both the drafting and approving agencies, we hold that the district judge did not abuse his discretion in finding that no violation of NEPA occurred from the failure to explicitly state all of the cumulative effects of the highway projects.

C. *Other Issues*

 In addition to the primary issues plaintiffs have raised on the merits of this case concerning alternatives and segmentation, plaintiffs also argue that the data underlying the justification for the highway projects was invalid. Acknowledging the statements in the EISs which indicate the reliance on the Regional Development Plan, plaintiffs argue that the RDP recommendations were based on a projection of 3.5 million in population by the year 2000. Although plaintiffs offered evidence at the hearings that the federal and state projections for the year 2000 were less than 2.5 million, the district judge did not abuse his discretion in finding that plaintiffs had not proved a substantial likelihood that these were the accurate figures. Proof on an issue such as the inaccuracy of population projections is inherently difficult because of the uncertainty in population projections; however, citing a conflicting projection does not prove the invalidity of another projection. Furthermore, although population growth is important to the issue of whether highway improvements are needed in Atlanta, the record indicates and the district judge found that the need for the highway projects was based on current need as well as future need. Regardless of the amount of growth, all parties agree that Atlanta will grow by the year 2000. Evidence of growth in the record along with evidence of the current need for the highway improvements justifies the district judge's finding in the case.

In related claims, the plaintiffs argue that NEPA was violated by the failure of the highway agency to circulate updated population data in the Draft EISs and to prepare a supplemental EIS on the Downtown Connector project after the data was available. In the ideal situation all information contained in the Final EIS should have been circulated in the Draft EIS; however, to require such perfection under NEPA fails to recognize the reality that new and better information may become available. Prohibiting the inclusion of updated information in a Final EIS defeats the purpose behind NEPA of encouraging a full and fair consideration of environmental effects. As the Supreme Court indicated in *Vermont Yankee Nuclear Power Corp., supra*, 435 U.S. at 555, 98 S.Ct. at 1217, and *ICC v. Jersey City*, 322 U.S. 503, 514, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420 (1944), an administrative process can never come to an end if the process must begin again every time new information is available. Inclusion of information in the Final EIS that was not circulated in the Draft EIS does not necessarily violate NEPA.

 Concerning the failure to prepare a supplemental statement on the updated information, the decision whether to prepare a supplemental statement is governed by the rule of reason. *See Sierra Club v. Morton, supra*, 510 F.2d 813; *Monarch Chemical Works v. Thone*, 604 F.2d 1083 (8th Cir. 1979). Federal regulation requires the preparation of supplemental statements "when substantial changes are made in the proposed action that will introduce a new or changed environmental effect of significance to the quality of the human environment or significant new information becomes available concerning the action's environmental aspects." 23 C.F.R. § 771.15. The emphasis of this regulation is on the environmental effect that substantial changes or additional information will have on the project. The record indicates

evidence that the changes would have no substantial effects on the project. The district judge did not abuse his discretion in relying on testimony to this effect to find that the plaintiffs had failed to demonstrate a likelihood of success on the merits of this issue.

### III

Although this case does not involve a decision on the merits of the issues, the previous discussion indicates that the plaintiffs did not demonstrate a likelihood of success on the merits and the district judge was correct in so finding. Despite this finding, however, a consideration of the other three factors under *Canal Authority, supra,* 489 F.2d at 572, would produce the same result. The district court found that although some harm would occur to plaintiffs if the injunction was not granted, the harm to the defendants and the general public outweighed the harm to the plaintiffs. The record indicates that the highways in Atlanta are currently carrying traffic beyond capacity levels. The serious traffic and safety hazards that result from such overcrowded highways indicate harm to the public that should not be outweighed by harm to the plaintiffs until plaintiffs have proven by a preponderance of the evidence that NEPA has been violated. Plaintiffs have not carried this burden and for the foregoing reasons we affirm the district court's decision denying the plaintiffs' motion for a preliminary injunction.

AFFIRMED.

### APPENDIX A

| ARC | Atlanta Regional Commission |
|---|---|
| EIS | Environmental Impact Statement |
| FHWA | Federal Highway Administration |
| HOV (lanes) | High Occupancy Vehicle (lanes) |
| MARTA | Metropolitan Atlanta Rapid Transit Authority |
| MPO | Metropolitan Planning Organization |
| NEPA | National Environmental Policy Act |
| RDP | Regional Development Plan |
| TIP | Transportation Improvement Plan |
| UMTA | Urban Mass Transit Authority |

### APPENDIX B

| | |
|---|---|
| — — | Interstate Expressways |
| — — | MARTA rail system in operation |
| .... | MARTA rail system planned or under construction |
| AB | I-85 Improvements Project |
| BCD | Brookwood Improvement Project |
| CE | Downtown Connector North Project |
| EF | Downtown Connector South Project (Not involved in this appeal) |

THOMAS A. CLARK, Circuit Judge, dissenting:

I dissent. I disagree that the standard of review is based on *Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir. 1974) and the four requirements set forth in the majority opinion. While the district court entered an order denying plaintiff's motion for temporary injunction, the motion was in reality treated as one for a permanent injunction on the merits. The court's order was fifty-one pages in length and as complete and thorough as a final permanent injunction could be. The case was before the court one year, testimony lasted six days, there were countless exhibits, and the case was under advisement in excess of eight months. In discussing the four prerequisites for a temporary injunction, this court has said:

In considering these four prerequisites, the court must remember that a preliminary injunction is an extraordinary and drastic remedy which should not be

granted unless the movant clearly carries the burden of persuasion. The primary justification for applying this remedy is to preserve the court's ability to render a meaningful decision on the merits.

> Although the fundamental fairness of preventing irremediable harm to a party is an important factor on a preliminary injunction application, the most compelling reason in favor of [granting a preliminary injunction] is the need to prevent the judicial process from being rendered futile by defendant's action or refusal to act.

Wright & Miller, Federal Practice and Procedure: Civil § 2947. Thus only those injuries that cannot be redressed by the application of a judicial remedy after a hearing on the merits can properly justify a preliminary injunction.

*Canal Authority v. Callaway*, 489 F.2d at 573. This heavy burden of persuasion should not have been placed on the plaintiffs in view of the fact that a trial on the merits was in fact conducted.

I also disagree with the majority that the federal defendants complied with the law.

Section 4332(2)(C)(iii) of Title 42 requires that an environmental impact statement contain a detailed statement of "alternatives to the proposed action." This requirement is mandatory, explicit, and incumbent upon "all agencies of the Federal Government." I cannot find that the rapid transit alternative was ever expressly considered by the Federal Government in any environmental impact statement prepared for the proposed highway expansion.

The proper role of the court in reviewing an environmental impact statement is to "determine whether the agency complied with the procedures mandated [by NEPA]."[1] I therefore cannot determine upon what ground this court may *infer* the consideration of an alternative where none has been provided. I have examined the EIS's, have found no express consideration of MARTA's rapid rail system as an alter-

native to the proposed highway expansion, and fail to see how this court may infer such a consideration based upon the "no-build" alternative.

Our affirmance here permits the defendants United States Department of Transportation and the Federal Highway Administration to avoid compliance with the law.

In a December 20, 1977, memorandum to Secretary Adams, Urban Mass Transit Administrator Page stated:

> Both of these large investments probably are not needed in the same corridor, at least not until well after the turn of the century.

> \* \* \* \* \* \*

> The problem is we cannot be sure of this because there never has been an analysis of the promising scaled down rail and highway options.

> \* \* \* \* \* \*

> We have insisted on this type of alternative analysis in Washington, Baltimore, Boston and about 20 other large cities around the nation and we should do the same thing in Atlanta.

In a January 25, 1978, memorandum from Assistant Secretary Davenport to Secretary Adams, he stated:

> The proposed improvement [I-85] is in the same corridor where the next phase of the Atlanta rapid rail system would be built and UMTA is concerned about its impact on the viability of MARTA.

> \* \* \* \* \* \*

> From our view it appears unlikely that both the I-85 improvements and the full extension of MARTA will be needed to meet the passenger demand in the corridor through 1990. Clearly, the construction of the additional highway capacity will affect MARTA ridership.

In the Decision Memorandum Secretary Adams decided to: "Approve the EIS for I-75/85 and do not require the highway to

---

1. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 417, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

be included in a corridor alternatives analysis."

As I read the law and the environmental impact statement, I can only conclude that the Federal Government did not follow the mandates of the statute.

With regard to the segmentation issue, I also respectfully dissent. The law is well settled that, under NEPA, segmentation of highway projects is improper for purposes of preparing EIS's.[2] Although there are significant exceptions to this rule, as, for example, where segmented projects have "substantial independent utility,"[3] these exceptions do not fit this case. Defendants intend to redesign the Brookwood Interchange into a six-lane expressway (actually eight lanes) running parallel to an already existing four-lane expressway.

It is illogical to think that the Brookwood Interchange can be considered in a vacuum without also considering the impact it will have on the other components of the highway system, including Northern DeKalb I–85 and the Downtown Connector. It makes little sense to segment components which must function as a unitary system in order to facilitate the efficient movement of traffic, and I therefore cannot agree with the majority's conclusion that the three highway segments can be defined as "separately proposed to accomplish independent purposes."[4]

---

2. *Sierra Club v. Callaway*, 499 F.2d 982, 987 (5th Cir. 1974).

3. *Inman Park Restoration, Inc. v. Urban Mass Transportation Administration*, 414 F.Supp. 99 (N.D.Ga.1975).

