724 F.Supp. 1341 (1989)
Michael DICKMAN and Marcy Dickman, Plaintiffs,
v.
CITY OF SANTA FE, Defendant.
Civ. No. 88-0074 JP.
United States District Court, D. New Mexico.
July 26, 1989.
*1342 Michael Dickman and Marcy Dickman, Santa Fe, N.M., pro se.
James C. McKay, City Atty., Santa Fe, N.M. for City of Santa Fe.

MEMORANDUM OPINION AND ORDER
PARKER, District Judge.
The subjects of this opinion and order are plaintiffs' Motion for Preliminary Injunction and defendant's Motion to Order Joinder of Necessary and Indispensable Parties or in the Alternative to Dismiss for Failure to Join Indispensable Parties. An evidentiary hearing was held on August 9, 1988. In addition, the court has reviewed a transcript of the proceedings which occurred in the District Court of the First Judicial District, Santa Fe, New Mexico prior to defendant's removal of this cause to federal court. After considering the motions and memoranda of the parties and after consulting pertinent authorities, I conclude that plaintiffs' motion should be granted and defendant's motion should be denied.
This matter arises under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4321 et seq. At issue in this case is a proposed highway development project for the City of Santa Fe. The city, serving as the lead agency in a joint project with state and federal highway authorities, intends to develop a new three-lane road from the intersection of Cerrillos Road and Richards Avenue in the southwest part of the city to the intersection of West Alameda Street and St. Francis Drive, west of the downtown area of Santa Fe. The Richards-Alameda project is to be completed in phases, the first three of which involve federal funding. The first phase includes construction of a three-lane extension of Richards Avenue from its intersection with Cerrillos Road north to Agua Fria Street. Phase two involves construction of a bridge on Richards Avenue across the Santa Fe River and a further northerly extension of Richards Avenue to West Alameda Street. The third phase consists of paving a presently *1343 unpaved portion of West Alameda Street which runs east approximately to Ricardo Road.[1] The last phase, which the defendant does not consider to be part of the same project, traverses east on West Alameda Street from the easterly end of Phase three to the intersection at St. Francis Drive. The cost of the entire road project is estimated at $16.5 million. Federal funding is $3.2 million, which is contemplated to apply only to the first three phases of the project.
Plaintiffs contend that the defendant City of Santa Fe impermissibly isolated the fourth phase of an essentially four-part highway improvement project in order to avoid preparation of an environmental assessment (EA) required pursuant to NEPA.[2] Plaintiffs seek to enjoin further project development until an EA which encompasses the fourth phase of the project is prepared. Defendant City of Santa Fe contends that planned improvements to the portion of West Alameda running from approximately Ricardo Road to the intersection at St. Francis Drive constitute an independent, non-federal action and NEPA does not apply.[3] Defendant also contends that the New Mexico Highway Department and the Federal Highway Administration are necessary parties to this litigation and joinder of these parties should be ordered or the action should be dismissed.

1. Defendant's Motion to Order Joinder of Necessary and Indispensable Parties or in the Alternative to Dismiss for Failure to Join Indispensable Parties
Defendant City of Santa Fe contends that the Federal Highway Administration (FHWA) is a necessary and indispensable party to this action under Fed.R. Civ.P. 19 because plaintiffs' success in part depends on proof that the City of Santa Fe is involved in a partnership with the federal agency such that the city's actions fall within the constraints of NEPA. Defendant argues that the New Mexico Highway Department (Department) is a necessary and indispensable party because the Department, under a contract with the City, prepared the EA on behalf of the city for the three phases of the project. Therefore, defendant asserts that the Department has an interest in the court's decision concerning the validity of the EA as prepared and would be subject to inconsistent obligations based on breach of contract in the event the EA is deemed unsatisfactory.
The facts of this case belie defendant's contention. The City Council of Santa Fe voted in a single action on December 9, 1987 to approve development of the entire road project. The project is expected to cost the city $16.5 million, with federal aid covering a small portion of the entire project cost. The city has complete control over the direction of the project, and the city undeniably serves as the lead agency in any effort that involves the Department or the FHWA. Plaintiffs seek to enjoin the city from pursuing its proposed road improvement project until it prepares a proper environmental assessment; plaintiffs seek no relief from any other agency. See Biderman v. Morton, 497 F.2d 1141, 1147 (2d Cir.1974) (court may enjoin non-federal entities based on violations of NEPA). There is no reason why complete relief *1344 cannot be accorded among those already parties to the lawsuit. Although the city may be in a position to suffer financial hardship or loss should the project be delayed, the same is not true for the Department or the FHWA. The Department and the FHWA have no direct interest in the outcome of the litigation such that their absence will impair the ability to protect that interest or leave them subject to inconsistent obligations.[4]See Coalition on Sensible Trans., Inc. v. Dole, 631 F.Supp. 1382, 1386-87 (D.D.C.1986) (state highway association not indispensable party to NEPA action). Any potential conflict between the city and the Department over the Department's preparation of the EA is entirely speculative and has no bearing on the outcome of this action in which plaintiffs seek to enjoin actions of the city.[5] Moreover, at the order of First Judicial District Judge Kaufman, FHWA and the Department were notified of the pending action and neither agency has moved to intervene in this lawsuit. Defendant's motion should be denied.

2. Plaintiffs' Motion for Preliminary Injunction
To succeed on their request for a preliminary injunction, plaintiffs must establish: (1) substantial likelihood of success on the merits; (2) irreparable injury unless an injunction issues; (3) the threatened injury to plaintiffs outweighs damage to defendant; and (4) the injunction, if issued, would not be adverse to the public interest. Lundgrin v. Claytor, 619 F.2d 61, 64 (10th Cir.1980). Injunctive relief under NEPA has uniformly been viewed as a proper remedy. "Ordinarily when an action is being undertaken in violation of NEPA, there is a presumption that injunctive relief should be granted against the continuation of the action until the agency brings itself into compliance." Realty Income Trust v. Eckerd, 564 F.2d 447 (D.C.Cir.1977). Upon review of the evidence and applicable law as discussed below, I conclude that plaintiffs have carried their burden of proving entitlement to injunctive relief.
42 U.S.C. § 4332(2)(C) of the NEPA, directs government agencies "to the fullest extent possible" to:
include in every recommendation or report on proposals for legislation and other major Federal actions significantly affecting the quality of the human environment, a detailed statement by the responsible official on 
(i) the environmental impact of the proposed action,
(ii) any adverse environmental effects which cannot be avoided should the proposal be implemented,
(iii) alternatives to the proposed action,
(iv) the relationship between local short-term uses of man's environment and the maintenance and enhancement of long-term productivity, and
(v) any irreversible and irretrievable commitments of resources which would be involved in the proposed action should it be implemented.
Thus, proposals for major Federal action significantly affecting the environment must be accompanied by a detailed discussion of the reasonably foreseeable effects of alternative courses of action. Moreover, "NEPA requires only that an agency take a `hard look' at the environmental consequences of any major federal action" prior to deciding a course of action; it does not *1345 dicate particular results. Park County Resource Council, Inc. v. United States Dept of Agriculture, 817 F.2d 609, 620 (10th Cir.1987); Robertson v. Methow Valley Citizens Council, 487 U.S. ___, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989).
Not all highway improvement projects are subject to the requirements of NEPA; NEPA applies only to federal actions. If a highway improvement project is a major federal action, NEPA requires that the agency determine whether there is significant environmental impact. A finding of federal action is essential because Congress did not intend the environmental laws to apply to state, city or private actions. See Kleppe v. Sierra Club, 427 U.S. 390, 399, 96 S.Ct. 2718, 2725, 49 L.Ed.2d 576 (1976); Maryland Conservation Council, Inc. v. Gilchrist, 808 F.2d 1039 (4th Cir.1986); Bennett v. Taylor, 505 F.Supp. 800, 803 (D.C.La.1980). However, the phrase "federal action" also includes projects undertaken or performed essentially by cities or states but funded in whole or in part by the federal government. Citizen Advocates for Responsible Expansion, Inc. (I-CARE) v. Dole, 770 F.2d 423 (5th Cir.), reh'g denied, 777 F.2d 701 (en banc) (1985). Similarly, absence of federal funding does not excuse noncompliance with NEPA requirements if the road project at issue is found to be a segment of an overall federal project. Hawthorn Environmental Preservation Assoc. v. Coleman, 417 F.Supp. 1091 (N.D.Ga.1976), aff'd, 551 F.2d 1055 (5th Cir.1977).
The issue raised by this case is whether the portion of the road project which involves widening of the existing course of West Alameda from the end of phase three to the intersection with St. Francis Drive is part of the entire road improvement project and, therefore, federal action subject to the constraints imposed by NEPA or whether the fourth phase is a separate city action.[6] Specifically at issue is whether the city impermissibly segmented the fourth phase from the first three phases of the project. "Segmentation of a large or cumulative project into smaller components in order to avoid designating the project a major federal action has been held to be unlawful." Park County Resource Council, Inc. v. United States Dept of Agriculture, 817 F.2d 609, 622 (10th Cir.1987). The rule against segmentation was developed to insure that interrelated projects, the overall effect of which may be environmentally significant, not be artificially divided into smaller, less significant actions. Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 298 (D.C.Cir.1987).
A number of factors which courts have balanced in determining whether improper segmentation has occurred derive from 23 C.F.R. § 771.111(f) (1988). Those factors include whether the proposed segment: (1) has logical termini; (2) has substantial independent utility; (3) does not foreclose the opportunity to consider alternatives; and (4) does not irretrievably commit federal funds for closely related projects. Id.; Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430 (5th Cir.1981); Swain v. Brinegar, 542 F.2d 364 (7th Cir.1976). Additionally, other courts have considered the manner in which the roads were planned and their geographic location. River v. Richmond Metropolitan Authority, 359 F.Supp. 611 (E.D.Va.), aff'd, 481 F.2d 1280 (4th Cir.1973).
Defendant contends that the first three phases of the highway improvement project constitute a whole project with the fourth phase having logical termini, being merely the improvement of a paved road. Defendant claims that the first three phases were envisioned as a "pavement-to-pavement" project; the origin of the project at the intersection with Cerrillos Road and the end of the project at the point on West Alameda where existing pavement begins, near Ricardo Road. Thus, defendant argues that the proposed segment at issue in this case, phase four, has logical termination points at the start of the pavement *1346 on West Alameda and the intersection of West Alameda at St. Francis Drive. Defendant's argument, however, ignores the practical reality of the proposed highway project. Evidence is uncontraverted that the purpose of the road project is to provide better access between the two employment centers of the city, the southwest portion of the city which is a developing commercial area and the downtown district. Moreover, the entire project was envisioned from the beginning stages; the city recognized a need to create access all the way from Cerrillos Road across the river to St. Francis Drive and the downtown area. It is geographically illogical for the segments to end in the middle of West Alameda, away from either population center.
A critical inquiry necessary to determine whether a project has been improperly segmented is whether the projects have independent utility.[7] The evidence is overwhelming that development of the first three phases of the highway project depends for its success on the improvements planned for the fourth phase. In planning the road project, the city intended to provide a new manner of access from the growing southwest portion of the city to the downtown area. Evidence was uncontraverted that the new road consisting of the first three phases will cause an unworkable "bottleneck" at the westerly end of the fourth phase if no improvements are made to the section of West Alameda running east from Ricardo Road to St. Francis Drive. Thus, although the city treated the road development as two projects, it also anticipated development of the fourth segment from the beginning of its planning. Indeed, the city considers the need for phase four so vital to the entire plan that it intends to construct the improvements to the fourth phase simultaneously with the new road development and intends to open the new development only when the fourth phase "is ready to accept the traffic volumes anticipated." Letter to DeLong, July 16, 1986. The two portions of the project are "so interdependent that it would be unwise or irrational to complete one without the other," Park County Resource Council v. United States Dept of Agriculture, 817 F.2d 609, 623 (10th Cir.1987), because each segment cannot serve its transportation purpose without the other segment being built.
It is estimated that the 12,000 vehicles per day that presently travel on West Alameda will increase to 17,000 vehicles per day by 1998 without any additional road development. However, the city estimates that with the new road project in place, including improvements to phase four, traffic on West Alameda at the intersection of St. Francis will increase far more dramatically.[8] Defendant produced evidence that proposed improvements to the fourth phase are independently necessary in order to correct traffic safety deficiencies and accomodate projected increase in traffic regardless of the new road project. However, evidence that the planned improvements to phase four will individually contribute to alleviation of traffic congestion and safety problems does not provide a basis for finding that the first three phases of the project serve a useful traffic function absent the intended improvements to phase four. It therefore cannot be said that the projects have independent significance and utility.
It is evident that building the fourth phase limits choices for building the other three phases and vice-versa. There is one road planned; the routing of the three *1347 phases was chosen to tie into the existing pavement of West Alameda at phase four. The proposed fourth phase determines the location of the first three phases and forecloses other alternatives.
There is no evidence to support a finding that the fourth phase irretrievably commits federal funds for closely related projects. The fourth phase could be built without mandating extension of the road to the intersection of Cerrillos Road and Richards Avenue.[9] However, as discussed above, there is ample evidence that development of the first three phases necessarily requires expenditure of funds, whether federal or city, for the fourth phase in order to build a workable road; failure to do so would be unreasonable. See 23 C.F.R. § 771.111(f)(2)(1988). Viewed from this latter perspective, the two portions of the road are inextricably linked as one project requiring funding. This supports the conclusion that the fourth phase is an integral aspect of the overall federal action even though the phase was contemplated to be built solely from city funds.
The facts of this case are similar to those in Swain v. Brinegar, 542 F.2d 364 (7th Cir.1976) (en banc) in which the court found that a 15-mile section of a 42-mile highway development had been improperly segmented. In Swain, the court determined that the 15-mile segment terminated at a point away from any major crossroad or population center and therefore had no logical point of termination. Id. at 370. In addition, the court found that the two sections served no independent purposes; rather, the entire 42-mile stretch of road was one unified "enterprise." Id. Moreover, the court determined that the termination point of the 15-mile segment effectively dictated the location of the remainder of the 42-mile highway. Id. On that basis, the court required an environmental impact statement to be prepared for the entire 42-mile highway project. Id.
In contrast, in Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430, 441-42 (5th Cir.1981), the court found that three portions of a large road improvement project were not improperly segmented because each segment served an independent transportation purpose regardless of whether other segments were built. The court noted that even though the projects were interrelated as part of an overall transportation plan, the projects were separately proposed to accomplish independent purposes. Id. at 441. The court recognized that although the projects were originally conceived of as part of an overall traffic plan, such an overall plan did not require a finding that it was one major federal action. Rather, the court correctly focused on the independent utility of the projects. Id. In the present case, not only were all four phases originally conceived of as one project, the first three phases of the road project depend on the fourth phase for vitality and therefore serve no independent purpose.
This case is also distinguishable from Coalition on Sensible Transportation, Inc. v. Dole, 826 F.2d 60 (D.C.Cir.1987), in which the court found no improper segmentation of portions of a highway improvement project. The proposed projects involved widening sixteen miles of an interstate freeway and modifications to five interchanges. The court found that the proposed projects did not have illogical termini and served independent purposes. Id. at 69. Specifically, the court rejected the argument that the proposed length of the road project resulted in illogical termini and should be extended for purposes of the environmental analysis. The court found that 45 percent of the traffic presently traveling the road would not make use of the additional length, and therefore, the additional proposed length of road was no more logical a termination point than the portion designated. Id. The court further reasoned that the designated sixteen-mile *1348 length of road served an independent purpose of reducing traffic congestion for those travelers. Id. Additionally, the court determined that proposed improvements to the interchanges would result in less congestion, facilitate local traffic and provide access to mass transit regardless of whether the widening to the freeway occurred; conversely, widening of the freeway would reduce traffic congestion even if no modifications to the interchanges were made. Id. As previously discussed, there is no basis for finding the proposed segments of the Santa Fe road project serve independent purposes. Moreover, the purpose of the road development project is to provide access for travelers to and from the southwest portion of the city to the downtown area. As such, unlike the situation in Coalition on Sensible Transportation, Inc., the road improvements are not substantially intended to assist access primarily within the proposed road project.
Plaintiffs have established a likelihood of success on the merits of the claim of improper segmentation. Because of the permanency of the proposed road development and in light of the Congressional intent under the NEPA that federal actions be evaluated for potential environmental impact prior to embarking on a course of action, Robertson v. Methow Valley Citizens Council, 487 U.S. ___, 109 S.Ct. 1835, 104 L.Ed.2d 351 (1989), plaintiffs have also succeeded in showing irreparable injury to their environmental interests. Hawthorn Environmental Preservation Association v. Coleman, 417 F.Supp. 1091, aff'd, 551 F.2d 1055 (5th Cir.1977). Although the court is cognizant of potential costs to the public by virtue of additional delay pending environmental analysis, I am persuaded that the public interest is better served by enjoining any further construction pending compliance with the requirements of NEPA.
IT IS THEREFORE ORDERED that:
(1) defendant's Motion to Order Joinder of Necessary and Indispensable Parties or in the Alternative to Dismiss for Failure to Join Indispensable Parties is denied; and
(2) plaintiffs' Motion for Preliminary Injunction is granted and defendant is enjoined from proceeding with the road development project until it complies with NEPA by preparing an environmental assessment which encompasses phase four of the road project.
NOTES
[1] The precise termination point of Phase three is unclear. Testimony elicited at the hearing indicates that the termination point is either Calle Nopal or further east at Ricardo Road. For purposes of this opinion, the court will treat the intersection of West Alameda at Ricardo Road as the termination point of Phase three.
[2] By regulation, an EA is designed to assist in determining the need for an environmental impact statement. 23 C.F.R. § 771.119(a) (1988). If upon preparation of an EA the proposed project is found to have no significant impact, an environmental impact statement is not required. 23 C.F.R. § 771.119(i) (1988).
[3] Because the City of Santa Fe intends to use federal funding for the first three parts of the road project, the City prepared an environmental assessment (EA) and determined that the three phases of the project did not result in significant environmental impact requiring further environmental impact analysis. Plaintiffs claim no error with respect to the EA as prepared for the three phases but merely claim that the City should have also prepared such an analysis for the fourth phase of the project.
[4] Having determined that the Department and the FHWA are not necessary or indispensable parties to this action, I need not determine whether this case falls within the "public rights" exception to Fed.R.Civ.P. 19 that numerous courts have recognized. Jeffries v. Georgia Residential Finance Authority, 678 F.2d 919, 929 (11th Cir.), cert. denied, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); Natural Resources Defense, Inc. v. Berklund, 458 F.Supp. 925, 933 (D.D.C.1978) (suit under NEPA involves vindication of public rights), aff'd per curiam, 609 F.2d 553 (D.C.Cir.1979); Louisiana v. Lee, 596 F.Supp. 645, 651 (D.La.1984) (rights embodied in the NEPA are "public" rather than "private"), vacated on other grounds and remanded, 758 F.2d 1081 (5th Cir.1985); see also, National Licorice Co. v. NLRB, 309 U.S. 350, 60 S.Ct. 569, 84 L.Ed. 799 (1940).
[5] Moreover, as discussed below, plaintiffs have no objection to the EA as prepared by the Department; plaintiffs merely seek to have the EA expanded to cover the fourth phase of the road.
[6] The court is not faced at this time with the question of whether the fourth phase of the project significantly affects the environment because no environmental assessment has been prepared with respect to this portion of the project. The only issue before the court is whether the fourth phase of the project is a federal action.
[7] Some courts have found that with respect to a road improvement project running through a city as opposed to running between cities, inquiry into the projects' independent utility is of far greater significance than the question of logical termini because it is not always easy to identify logical termini within a city. Coalition on Sensible Transportation, Inc. v. Dole, 826 F.2d 60 (D.C.Cir.1987); Piedmont Heights Civic Club, Inc. v. Moreland, 637 F.2d 430 (5th Cir. 1981).
[8] The EA estimate for daily traffic on West Alameda at the intersection of St. Francis is 37,000 vehicles. There was testimony at the hearing that this figure represents a projection based on a larger road development of four lanes, which proposed development was scaled down by the City Council in December of 1987. Thus, there is no actual projection of vehicular traffic for the present plan.
[9] Of course, once the city commits itself to building a new access route from Cerrillos Road to the downtown area, improvements made to phase four would make it most wise to expend funds to create an access route that links to phase four. To that extent, development of phase four serves to commit funds for the other phases. See, Coalition on Sensible Transportation, Inc. v. Dole, 826 F.2d 60, 69 (D.C.Cir.1987).