**GEORGIA POWER COMPANY,**
Plaintiff,

v.

**Charles F. BAKER, Defendant.**

**Civ. A. No. 84–224–2–MAC.**

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 6, 1984.

H. Jerome Strickland, Macon, Ga., for plaintiff.

S. Lee Storesund, Atlanta, Ga., Robert A. Berlin, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

In 1947, the Federal Energy Regulatory Commission (formerly known as the Federal Power Commission) granted the Georgia Power Company a license to construct and operate a hydroelectric power plant near Milledgeville, Georgia (Project Number 1951). See generally *Georgia Power Co. v. Federal Power Commission*, 152 F.2d 908 (5th Cir.1946), for a discussion of the background of the project. Article 13 of the license granted to Georgia Power provides in part that:

> So far as is consistent with proper operation of the project, the Licensee shall allow the public free access, to a reasonable extent, to project waters and adjacent project lands owned by the Licensee for the purpose of full public utilization of such lands and water for navigation and for outdoor recreational purposes, including fishing and hunting; *Provided,* that the Licensee may reserve from public access, such portions of the project waters, adjacent lands, and project facilities as may be necessary for the protection of life, health, and property.

Pursuant to the license, Georgia Power built a dam on the Oconee River, causing the flooding waters to form a reservoir named Lake Sinclair. In 1981, Georgia Power adopted a rule prohibiting the operation of seaplanes on Lake Sinclair. Defendant Charles F. Baker, who owns land contiguous to the lake, operated his seaplane in violation of Georgia Power's rule. Georgia Power asks the court to enjoin

defendant from operating a seaplane on Lake Sinclair.

The court can grant a preliminary injunction only when four prerequisites are satisfied. These prerequisites are: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) the threatened injury to plaintiff must outweigh the threatened harm the injunction may do to defendant, and (4) granting the preliminary injunction will not disserve the public interest. *Piedmont Heights Civic Club, Inc. v. Moreland,* 637 F.2d 430, 435 (5th Cir.1981) (Unit B). Plaintiff Georgia Power has the burden of persuasion on all four prerequisites. *Id.*

### Analytical Framework

In 1920, Congress enacted the Federal Power Act (the Act) to make progress with the development of the "long idle" water power resources of the nation. *First Iowa Hydro-Electric Cooperative v. Federal Power Commission,* 328 U.S. 152, 171, 66 S.Ct. 906, 915, 90 L.Ed. 1143 (1946). The Act requires power companies to obtain a license as a prerequisite to constructing and operating a dam on a navigable waterway or, as here, on a non-navigable tributary of an interstate navigable waterway. *Georgia Power Co.,* 152 F.2d at 913. Congress delegated the authority to grant such licenses to the Federal Energy Regulatory Commission (the FERC). 16 U.S.C.A. § 797(e) (West 1974). Besides granting licenses, the FERC has the power to take action "necessary or appropriate" to carry out the provisions of the Act. *Id.* § 825h.

The issue before the court is whether Georgia Power has the authority to prohibit the operation of seaplanes on this lake. The source of Georgia Power's authority must be the FERC. Therefore, the threshold issue is whther the FERC has the authority to empower its licensees to prohibit seaplane operation.

Even though the Act's provisions regarding the licensing powers given to the FERC are not to be interpreted narrowly, the FERC's action must conform with the purposes and policies of Congress and must not contravene any term of the Act. *Niagara Mohawk Power Corp. v. Federal Power Commission,* 379 F.2d 153, 158 (D.C.Cir.1967). The agency has the "power to do everything essential to the execution of its clearly granted powers and achievement of the purposes of the legislation." *Northern States Power Co. v. Federal Power Commission,* 118 F.2d 141, 143 (7th Cir.1941). Moreover, the Act states that licenses can be issued on a condition not expressed in the Act only if the condition is not inconsistent with the provisions of the Act. 16 U.S.C.A. § 803(g) (West 1974). Congress did not expressly give the FERC the power to regulate seaplane operation or to authorize its licensees to do so. Therefore, if the FERC has an implied power to do so, the power must conform to congressional policy behind the Act, the power must be necessary to carry out the FERC's clearly granted powers, and it must not contravene the Act.

### Congressional Policy

Congress cannot confer upon the FERC any power that is within the states' exclusive province. The Supreme Court has recognized that the legislative history of the Act discloses a "vigorous" determination of Congress to avoid unconstitutional invasion of the jurisdiction of the states. *First Iowa Hydro-Electric Cooperative v. Federal Power Commission,* 328 U.S. 152, 171, 66 S.Ct. 906, 915, 90 L.Ed. 1143 (1946). Under the Act there is a division of powers between the state and federal governments. *Id.* The Act leaves to the states their traditional jurisdiction superceded by the federal government's right to regulate interstate and foreign commerce. *Id.* Each government has final authority on subjects within its own jurisdiction. *Id.* at 167, 66 S.Ct. at 913.

### The Act

The Act expressly provides that certain state laws are not superceded by the Act. The Act provides:

§ 821. State laws and water rights unaffected

Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use, or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

16 U.S.C.A. § 821 (West 1974). The word "municipal" in the statute means pertaining to the public. *See Black's Law Dictionary* 917 (rev. 5th ed. 1979). The Supreme Court stated that this provision refers to state laws relating to property rights concerning the control, appropriation, use, or distribution of water. *First Iowa Hydro-Electric Cooperative*, 328 U.S. at 175–76, 66 S.Ct. at 917. A riparian owner such as defendant Baker has a fundamental proprietary right to use the water of the lake. R. Clark, 1 *Waters and Water Rights* § 53.3, at 351–53 (1967), *cited in Escondido Mutual Water Co. v. La Jolla Band of Mission Indians*, — U.S. —, —, 104 S.Ct. 2105, 2114, 80 L.Ed.2d 753 (1984). Therefore, the right to operate a seaplane is a property right and laws governing seaplane operation on Lake Sinclair are within the area that Congress reserved to the states.

■ As between the states and the FERC, the states have the exclusive authority to regulate seaplane operation. In Georgia, there is no state law addressing the operation of seaplanes. The Georgia legislature has regulated boating on Lake Sinclair, *see* Georgia Boat Safety Act, O.C.G.A. §§ 52–7–1 to –26 (1982 & Supp.1984), which by analogy shows that it can regulate the safety of seaplane operation on Lake Sinclair if it chooses to do so. Merely because the legislature of the State of Georgia has not decided to enact legislation does not give Georgia Power the authority to do so. The states do not have to enact legislation in order to preserve their jurisdiction over an area in their exclusive domain.

It may be that Federal Aviation Administration regulations preempt state statutes on seaplanes; however, that question is not before the court. *See City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 93 S.Ct. 1854, 36 L.Ed.2d 547 (1973); *Pirolo v. City of Clearwater*, 711 F.2d 1006 (11th Cir.1983). In any event, it is clear that Georgia Power does not have the authority to do so.

In another provision of the Act, Congress requires the FERC to shape the license so that the project is "best adapted to a comprehensive plan for improving or developing a waterway or waterways for ... [among other things] beneficial public uses, including recreational purposes." 16 U.S.C.A. § 803(a) (West 1974). The FERC therefore has an express statutory duty to insure that the project's waters are available to the public for recreation. Prohibiting seaplane operation is directly contrary to this express duty.

■ Congressional policy and the Act clearly show that the FERC does not have an implied power to authorize Georgia Power to regulate seaplane operation.

### The License

As shown above, the FERC cannot give Georgia Power the authority to prohibit seaplane operation at Lake Sinclair. Moreover, a literal reading of the license shows that the FERC did not do so. Article thirteen of the license requires Georgia Power to allow the public free access to Lake Sinclair for the purpose of full public utilization of the lake for navigation and recreation. There are three relevant restrictions to this requirement; Georgia Power argues that these restrictions require Georgia Power to prohibit seaplane operation.

First, the license provides that Georgia Power "may reserve from public access such portions of the project waters, adjacent lands, and project facilities as may be necessary for the protection of life, health, and property." In this case Georgia Power is not reserving a *part* of Lake Sinclair from *public access;* instead, it is reserving the entire lake from access by only part of the public—those persons operating seaplanes. The language of the license shows that the FERC intended to give Georgia

Power the authority to prohibit all the public—whether boaters, seaplane pilots, or swimmers—from, for example, entering the part of Lake Sinclair immediately contiguous to the power plant. Georgia Power could restrict such access only to the extent necessary to protect life, health, or property.

The license also provides that "[s]o far as is consistent with proper operation of the project, the Licensee shall allow the public free access." There is no evidence that the operation of seaplanes on Lake Sinclair is inconsistent with or interferes with the operation of the Georgia Power project.

Last, the license provides that Georgia Power shall allow the public free access "to a reasonable extent." Georgia Power argues that this clause requires it to disallow access beyond a reasonable extent, and that operating a seaplane on the lake is unreasonable access. The clause "to a reasonable extent" must be read in the light of the rest of the license, the Act, and congressional policy. In this light, the clause must be construed *ejusdem generis* as meaning nothing more than the more specific restrictions in the other two clauses.

Therefore, even assuming the FERC can confer this authority upon Georgia Power, the license shows that the FERC did not do so. For the above reasons, Georgia Power is not substantially likely to prevail on the merits. Prerequisites two, three, and four of *Piedmont Heights Civic Club, Inc. v. Moreland,* 637 F.2d 430, 435 (5th Cir.1981), are also not satisfied here. Accordingly, plaintiff's request for a preliminary injunction is DENIED.

### Primary Jurisdiction

Georgia Power argues that the seaplane-prohibition rule in question cannot be reviewed by this court because the FERC has primary jurisdiction over this case. The court notes first that Georgia Power commenced this lawsuit.

The doctrine of primary jurisdiction comes into play only when both a court and an administrative agency have jurisdiction over a case. *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). In those cases the agency has exclusive original jurisdiction because it has special competence to decide the issues and because of the need for national uniformity. *Id.* However, if the issue in a case is purely a question of law, the primary jurisdiction doctrine does not apply. *Great Northern Railway Co. v. Merchants Elevator Co.,* 259 U.S. 285, 294, 42 S.Ct. 477, 480, 66 L.Ed. 943 (1922). As stated earlier, the present case presents the issue of the authority of a power company holding a license granted by the FERC to prohibit the public from operating seaplanes on a lake. The facts concerning this issue are undisputed. The FERC does not have primary jurisdiction to decide the issue because a decision on the authority of Georgia Power is a question of law and does not fall within the special competence of the FERC.

Plaintiff Georgia Power's request for a preliminary injunction is DENIED.