SENSIBLE TRAFFIC ALTERNATIVES AND RESOURCES, LTD., Plaintiff,

v.

FEDERAL TRANSIT ADMINISTRATION OF THE U.S. DEPARTMENT OF TRANSPORTATION; Administer of the Federal Transit Administration of the U.S. Department of Transportation; Department of Transportation Services of the City & County of Honolulu; Director of the Department of Transportation Services of the City & County of Honolulu, et al., Defendants.

Civil No. 03–00628 SOM–LEK.

United States District Court, D. Hawai'i.

Feb. 19, 2004.

---

Elijah Yip, Cades Schutte, Honolulu, HI, for Plaintiff Sensible Traffic Alternatives and Resources, Ltd., a Hawai'i non-profit corporation dba The Alliance for Traffic Improvement.

Harry Yee, Assistant United States Attorney, Office of the United States Attorney, Honolulu, HI, for Defendants Federal Transit Administration, U.S. Department of Transportation; Administrator of the Federal Transit Administration of the U.S. Department of Transportation.

John Manaut, Carlsmith Ball LLP, Honolulu, HI, for Defendants Transportation Services, City and County of Honolulu; Director of the Department of Transportation Services for the City and County of Honolulu.

*ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CITY & COUNTY OF HONOLULU'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANT FEDERAL TRANSIT ADMINISTRATION'S JOINDER THEREIN*

MOLLWAY, District Judge.

## I. INTRODUCTION.

How traffic congestion on Oahu should best be addressed is a matter that touches

nearly everyone. The subject has generated heated debate for years within the community. While this case concerns an attempt by the City & County of Honolulu ("City") to address the problem, this case clearly does not call upon this court to take on the political task of resolving the problem. Instead, this case presents the narrow question of whether the City has complied with applicable environmental protection laws as it prepares to move forward with what it says will be the first phase of a "Bus Rapid Transit" ("BRT") system intended to alleviate traffic congestion.

The BRT system, if fully implemented, will run from Kapolei to Waikiki and the University of Hawaii at Manoa. In proceeding with the BRT system, the City had to comply with the National Environmental Policy Act, 42 U.S.C. §§ 4321–4370e ("NEPA") and the Hawai'i Environmental Policy Act, ch. 343, Hawaii Revised Statutes ("HEPA"). The City and the Federal Transit Administration ("FTA") prepared draft and supplemental environmental impact statements for the entire system, noting that it would be built in phases, beginning with an In–Town BRT.

To comply with HEPA, the City then issued a final environmental impact statement ("State FEIS") for the entire system. The then-Governor accepted the State FEIS.

In contrast to the State FEIS, the final environmental impact statement required by NEPA ("Federal FEIS") discussed the impact of the entire BRT system but then focused on a single segment, the Initial Operating Segment ("IOS"), described as the first phase of construction of the system. The FTA issued a Record of Decision ("ROD") accepting only the portion of the Federal FEIS that pertained to the IOS and leaving the remainder of the Federal FEIS for later review and acceptance.

The construction of the IOS is at the heart of this case. Plaintiff Sensible Traffic Alternative and Resources, Ltd., dba The Alliance for Traffic Improvement ("ATI"), arguing that HEPA and NEPA are falling victim to politics, files this lawsuit alleging that those laws have been violated.

The City, joined by the FTA, has moved for summary judgment on all claims.[1] The court grants the motion in part and denies it in part. The court grants summary judgment against ATI on its HEPA claims (Counts III, VII, and X), as those claims are barred by Haw.Rev.Stat. § 343–7. The court also dismisses, for lack of standing by ATI, ATI's claims that NEPA was violated because *no joint environmental impact statement was prepared* (Count VI) and because there was allegedly no coordinated environmental review (Count VIII). The court denies the remainder of the motion as it pertains to ATI's NEPA claims, as the City has not demonstrated that issue and/or claim preclusion applies and as the City has not met its initial burden of demonstrating that it is entitled to summary judgment on those claims.

## II. *BACKGROUND FACTS.*

The factual background for this motion is largely undisputed. It was previously set forth in this court's order denying ATI's request for a temporary restraining order. That factual background is incorporated herein by reference and is modi-

---

1. Although the FTA stated at the hearing that it filed a "substantive" joinder, thereby seeking identical relief itself, that joinder did not comply with Local Rule 7.9, making it a "joinder of simple agreement." *See* Local Rule 7.9. Nevertheless, because ATI is not prejudiced by treating the FTA's joinder as a "substantive" joinder seeking identical relief on behalf of the FTA, the court deems the FTA's joinder to be a "substantive" joinder.

fied and supplemented here only as necessary.

On or about August 16, 2000, in an attempt to comply with the requirements of HEPA and NEPA, the City, through its Department of Transportation Services ("DTS"), and the FTA submitted a Major Investment Study/Draft Environmental Impact Statement ("MIS/DEIS") for the "Primary Corridor Transportation Project." *See* MIS/DEIS (Aug. 16, 2000) (attached as Ex. 1 to Opposition). After rejecting various alternatives, including a light rail alternative, the MIS/DEIS explored three alternatives: (1) a "No Build" alternative; (2) a Transportation System Management ("TSM") alternative; and (3) a BRT alternative. *Id.* at S–5, 2–58. The MIS/DEIS noted that the BRT system would be built in phases: "Funding would be sought from multiple federal, State and local sources. Construction would be phased according to the availability of funds. Therefore, the construction schedule would be flexible and could be adjusted according to fiscal and mobility considerations." *Id.* at S–18.

In March 2002, after choosing the BRT system as the locally preferred alternative ("LPA"), the City, through DTS, together with the FTA, submitted, pursuant to NEPA and HEPA, a Supplemental Draft Environmental Impact Statement ("SDEIS") for the Primary Corridor Transportation Project. *See* SDEIS (attached to Opposition as Ex. 3). The SDEIS discussed a refinement to the MIS/DEIS that added "a new In–Town BRT branch (Kakaako Makai Branch) running from the Iwilei Transit Center through downtown Honolulu, the Aloha Tower Marketplace, and Kakaako Makai en route to Waikiki." SDEIS (second page of Ex. 3); *see also* SDEIS at P–1. The Kakaako Makai Branch described in the SDEIS is nearly identical to the IOS described in the Federal FEIS. *Compare* SDEIS at 2–18 through 2–19 *with* Federal FEIS at IOS–11. The SDEIS noted that "[f]unding would be sought from multiple federal and local sources. Construction would be phased according to the availability of funds. Therefore, the construction schedule would be flexible and could be adjusted according to fiscal and mobility considerations." *Id.* at S–16. The SDEIS provides for construction of the Kakaako Makai Segment of the In–Town BRT from 2002 through 2005. *See* SDEIS, Figure 2.5–1 at 2–27.

Although the MIS/DEIS and the SDEIS were prepared jointly by the City and the FTA, two final environmental impact statements were prepared. The first was issued by DTS on or about November 25, 2002, to comply with HEPA. *See* State FEIS (Nov. 25, 2002) (attached to Affidavit of Kenneth Toru Hamayasu as Ex. A).[2] The State FEIS discusses the Refined LPA. It also discusses the part of the Refined LPA that constitutes the IOS, nearly identically describing it but calling it not the IOS, but the Kakaako Makai Branch, a branch of the In–Town BRT System. *Compare* State FEIS, Kakaako Makai Branch (described at 2–31 and depicted in Figure 2.2–5 on 2–32) *with* Federal FEIS, IOS Routing (described at IOS–11 and depicted in Figure IOS 2–1B on IOS–10). Like the MIS/DEIS and the SDEIS, the State FEIS notes that "[f]unding would be sought from multiple federal and local sources. Construction schedules would be phased according to the availability of funds. Therefore, the construction schedule would be flexible." State FEIS at S–16. The State FEIS includes a schedule for the Refined LPA, which notes that it would "be implemented by DTS as sepa-

---

2. The State FEIS did not list FTA as a submitting agency. *Id.*

rate projects," and demonstrates that construction would begin with the In–Town BRT system. *See id.* at 2–45 (Figure 2.5–2). Figure 2.5–2 of the State FEIS indicates that the "Iwilei–Waikiki Segment" would be constructed between 2003 and 2005.

The then-Governor of the State of Hawaii accepted the State FEIS on or about November 29, 2002. *See* Letter from Benjamin J. Cayetano to Cheryl D. Soon (Nov. 29, 2002) (accepting the adequacy of the State FEIS, but not endorsing the project).

A second final environmental impact statement was issued by the FTA and the City in July 2003 to comply with NEPA. *See* Federal FEIS (July 23 and 25, 2003) (attached to Hamayasu Aff. Ex. B). Like the MIS/DEIS, SDEIS, and the State FEIS, the Federal FEIS notes that "[f]unding would be sought from multiple federal and local sources. Construction schedules would be phased according to the availability of funds. Therefore, the construction schedule would be flexible." Federal FEIS at S–30. The Federal FEIS has an extensive discussion of the IOS, *see id.,* IOS Chapter, noting that "[i]mplementation of the Refined LPA will be phased over 14 years, the first phase consisting of construction of the Initial Operating Segment (IOS), which is scheduled to begin with award of a construction contract in Calendar Year 2003." *Id.* at 6–3; 2–53 ("the BRT project elements will be implemented as a series of manageable, discrete projects. At each stage of project development, including the initial IOS phase, the elements in place at that time would work with the reset of the transit network. . . . Implementation of the In–Town BRT will begin with construction of the IOS. . . . The remainder of the In–Town BRT will be stated shortly after the IOS."); and IOS–7 ("One of the advantages of BRT compared to a rail system is its flexibility for staging. Not only can segments be built sequentially, but features of each segment can be phased over time as well.").

The FTA announced its decision as to the Federal FEIS via a Record of Decision ("ROD"), identifying the alternatives considered and which alternatives were environmentally preferable. *See* 40 C.F.R. § 1505.2; Record of Decision (Initial Operating Segment of the Primary Corridor Transportation Project) at 26 (signed by the Regional Director on October 23, 2003) (attached to Opposition as Ex. 6). This ROD selects and approves the construction of the IOS. *Id.* The ROD anticipates that DTS will develop a supplemental environmental review for the remainder of the LPA and anticipates that a new FTA finding will also be required regarding that remainder. *Id.* The ROD continues to note that the BRT system will be built in phases based on "limited funding." *See id.* at 5.

## III. *NEPA/HEPA FRAMEWORK.*

The legal framework of NEPA and HEPA was also set forth in this court's order denying ATI's request for a temporary restraining order. It too is incorporated herein by reference and supplemented as necessary.

## IV. *SUMMARY JUDGMENT STANDARD.*

Summary judgment shall be granted when:

the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c); *see also Addisu v. Fred Meyer, Inc.,* 198 F.3d 1130, 1134 (9th Cir.2000). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. *See id.* at 323, 106 S.Ct. 2548. "A moving party without the ultimate burden of persuasion at trial—usually, but not always, a defendant—has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir.2000).

To carry the initial burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Id.* To carry the ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Id.*

When a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything to survive a motion for summary judgment, even if the nonmoving party would have the ultimate burden of persuasion at trial. *Id.* at 1102–03. If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense. *Id.* at 1103. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (footnote omitted). The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (quotation omitted). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (*quoting First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)); *Addisu,* 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact"). "[I]f the factual context makes the nonmoving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987) (*citing Matsushita Elec. Indus. Co.,* 475 U.S. at 587, 106 S.Ct. 1348), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 699, 98 L.Ed.2d 650 (1988); *accord Addisu,* 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion").

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *T.W. Elec. Serv.,* 809 F.2d at 631. In other words, all evidence and inferences must be construed in the light most favorable to the nonmoving party. *Id.* Inferences may be drawn from underlying facts

not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. *Id.*

## V. *ANALYSIS.*

### A. *The City Does Not Show that Issue or Claim Preclusion Applies.*

The City argues that issue and/or claim preclusion bars all of ATI's claims. The City contends that a lawsuit like this one was decided in the City's favor in state court. *See E Noa Corp. v. Dep't of Trans. Servs. of the City & County of Honolulu,* First Circuit Court, State of Hawaii, Civ. No. 03–1–0283–02(SSM).

■ Generally speaking, claim preclusion, or res judicata, prohibits a party from relitigating a previously adjudicated cause of action. Issue preclusion, or collateral estoppel, on the other hand, applies to a subsequent suit between the parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action. *Dorrance v. Lee,* 90 Hawai'i 143, 148, 976 P.2d 904, 909 (1999). The burden is on the City, as the party asserting the defense, to prove adequate representation of the interests and proper protection of the rights of the nonparty in the prior action. *See In re Dowsett Trust,* 7 Haw.App. 640, 646, 791 P.2d 398, 402 (1990). The City has not met this burden.

■ The preclusive effect in this court of a Hawaii state court decision is determined by Hawaii law. *Pedrina v. Chun,* 97 F.3d 1296, 1301 (9th Cir.1996) ("In determining whether a prior state court action bars a subsequent federal action, the federal court must look to the *res judicata* principles of the state court in which the judgment was rendered."), *cert. denied,* 520 U.S. 1268, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1997); *In re Russell,* 76 F.3d 242, 244

(9th Cir.1996) ("Because the underlying judgment was rendered in state court, we must apply California's *res judicata* and collateral estoppel principles.").

■ Under Hawaii law, the doctrine of res judicata applies when: 1) the claim asserted in the action in question was or could have been asserted in the prior action, 2) the parties in the present action are identical to, or in privity with, the parties in the prior action, and 3) a final judgment on the merits was rendered in the prior action. *Pedrina,* 97 F.3d at 1301 (citing *Santos v. State of Hawaii,* 64 Haw. 648, 646 P.2d 962, 966 (1982)); *Morneau v. Stark Enters., Ltd.,* 56 Haw. 420, 422–23, 539 P.2d 472, 474–75 (1975) (the "judgment of a court of competent jurisdiction is a bar to a new action in any court between the same parties or their privies concerning the same subject matter, and precludes the relitigation, not only of the issues which were actually litigated in the first action, but also of all grounds of claim and defense which might have been properly litigated in the first action but were not litigated or decided").

■ Under Hawaii law, the doctrine of collateral estoppel bars relitigation of an issue when: (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication. *Dorrance,* 90 Hawai'i at 149, 976 P.2d at 910.

■ Res judicata and collateral estoppel prevent a multiplicity of suits, avert inconsistent results, and provide a limit to litigation by promoting finality and judicial economy. *Dorrance,* 90 Hawai'i at 148–49,

976 P.2d at 909–10. Both doctrines serve to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudications. They therefore further the interests of litigants, the judicial system, and society by bringing an end to litigation when matters have already been tried and decided on the merits. *See Kauhane v. Acutron Co.,* 71 Haw. 458, 463, 795 P.2d 276, 278–79 (1990). The doctrines give every litigant a chance to try its case on the merits, but they limit the litigant to one such chance. *Id. Accord Pedrina v. Chun,* 906 F.Supp. 1377, 1398 (D.Haw. 1995) (stating that the res judicata doctrine protects the integrity of the courts and promotes reliance on judicial pronouncements by requiring that the decisions and findings of the courts be accepted as undeniable legal truths), *aff'd,* 97 F.3d 1296 (9th Cir.1996).

■ For both res judicata and collateral estoppel to apply in this case, ATI must be identical to, or in privity with, E Noa Corporation, the party in the state court action. *See Pedrina,* 97 F.3d at 1301; *Morneau,* 56 Haw. at 422–23, 539 P.2d at 474–75; *In re Dowsett Trust,* 7 Haw.App. 640, 646, 791 P.2d 398, 402 (1990). Because ATI and E Noa Corporation are indisputably different entities, this court turns to the issue of whether they are in privity.

The Intermediate Court of Appeals for the State of Hawaii ("ICA") notes that there is no clearly accepted definition of "privity." *In re Dowsett Trust,* 7 Haw. App. 640, 646, 791 P.2d 398, 402 (1990). The ICA says that there is "privity" when the relationship between a party of record and a nonparty is close enough to justify treating the nonparty as if it had been a party for purposes of res judicata. *Id.* Adequate representation of the interests of the nonparty sought to be bound and proper protection of its rights are "major considerations" in any "privity" analysis. *Id.; see Pedrina,* 906 F.Supp. at 1400 (noting that, under Hawaii law, privity exists for purposes of res judicata only if a nonparty's interest was adequately represented and afforded proper protection in the prior action).

The City has not shown that the relationship between E Noa Corporation and ATI is sufficiently close that they can said to be in privity with each other. At best, the City has argued that E Noa Corporation is a "member" of ATI, that Cliff Slater is both a member of E Noa Corporation and ATI's incorporator, and that the same or similar issues were litigated in the state court case. A judgment in an action involving a "member" of a nonstock corporation does not generally have preclusive effect on the corporation itself.[3] *See* Restatement (Second) of Judgments § 59 (1982). Exceptions to this rule may apply when a nonparty is more than a mere member in an unincorporated group. For instance, issue and claim preclusion may apply when there is a relationship such as principal to agent, indemnitee to indemnitor, or successor in interest. *Id.* Similarly, issue and claim preclusion may apply when there was a derivative suit or when the corporation is closely held or is the alter ego of the member. *Id.* The City has not demonstrated that any of these exceptions applies here; "members" of ATI appear to be persons or groups that simply identify themselves as sharing the goals of that nonprofit corporation.

---

**3.** ATI's Articles of Incorporation indicate that it "is nonprofit in nature and shall not authorize or issue shares of stock." *See* Articles of Incorporation (July 17, 2003) (attached as Ex. 11).

### B. HEPA Claims.

ATI alleges three violations of HEPA. Count III alleges a failure to prepare a new DEIS and/or a supplemental EIS. Count VII alleges a failure to prepare a joint EIS. Count X alleges a failure to coordinate public review of the EISs.

#### 1. Eleventh Amendment Immunity Does Not Bar ATI's HEPA Claims.

■ The City argues that the Eleventh Amendment bars ATI's HEPA claims. This court disagrees, as the City has no Eleventh Amendment immunity.

■ Under the Eleventh Amendment, a state is immune from suit brought in federal court by her own citizens or citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).[4] The Eleventh Amendment bars a suit when the state is the real, substantial party in interest. *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900. Accordingly, federal court actions against agencies or instrumentalities of a state are also barred by the Eleventh Amendment. *Id.* at 100, 104 S.Ct. 900; *Shaw v. State of Cal. Dept. of Alcoholic Beverage Control*, 788 F.2d 600, 603 (9th Cir.1986).

The problem with the City's argument is that ATI is not suing the State of Hawaii or any of its officials acting in their official capacities. In other words, because the City is not an "arm" of the State of Hawaii, Eleventh Amendment immunity is inapplicable. *See Alden v. Maine*, 527 U.S. 706, 756, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999) ("The second important limit to the principle of sovereign immunity is that it bars suits against States but not lesser entities. The immunity does not extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State."); *Hyland v. Wonder*, 117 F.3d 405, 413, *as amended by* 127 F.3d 1135 (9th Cir.1997) ("If the state is not legally liable for any judgment against the named individuals, and local government, rather than the state, would be responsible for any money judgment rendered, an action against individual defendants who are state employees is not barred by the Eleventh Amendment.").[5] The City has not demonstrated that any judgment issued against it in this case would be a judgment against the State of Hawaii. Accordingly, the City has failed

---

**4.** This bar applies regardless of the nature of the relief sought, including when plaintiffs seek injunctive relief. *Pennhurst*, 465 U.S. at 100, 104 S.Ct. 900 ("This jurisdictional bar applies regardless of the nature of the relief sought."); *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982) ("the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction").

**5.** To determine whether the City is an "arm of the state" and therefore immune from certain suits under the Eleventh Amendment, this court analyzes a number of factors identified by the Ninth Circuit. The most important factor concerns "whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury." *Jackson v. Hayakawa*, 682 F.2d 1344, 1349 (9th Cir.1982). Other factors include performance by the entity of an essential government function, its ability to sue or be sued, its power to take property in its own name or in the name of the state, and its corporate status. *Id.; accord Mitchell v. Los Angeles Cmty. Coll. Dist.*, 861 F.2d 198, 201 (9th Cir.1988), *cert. denied*, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989). On balance, these factors indicate that the City is not an "arm" of the state such that it has Eleventh Amendment immunity. Of the five factors, only one (performance of essential government functions) could possibly weigh in favor of finding that the City is an "arm" of the state.

to demonstrate that Eleventh Amendment immunity applies.

### 2. ATI's HEPA Claims Are Barred by Haw.Rev.Stat. § 343–7.

■ The City argues that, because ATI did not submit written comment and did not initiate this proceeding within sixty days of being informed pursuant to section 343–7(c), this court must dismiss ATI's claims. Section 343–7(c) applies to judicial proceedings, "the subject of which is the acceptance of an environmental impact statement." Haw.Rev.Stat. § 343–7(c). Section 343–7(c) provides that affected agencies and persons who submit written comment about an EIS "during the designated review period shall be adjudged aggrieved parties for purposes of bringing judicial action under this section." Haw. Rev.Stat. § 343–7(c). However, "contestable issues shall be limited to issues identified and discussed in the written comment." *Id.* The Supreme Court of Hawaii has therefore stated that review of the sufficiency of an EIS is limited to concerns that a person raised in his or her comments. *Price v. Obayashi Hawaii Corp.,* 81 Hawai'i 171, 183, 914 P.2d 1364, 1376 (1996) ("our review of the EIS is limited to those concerns that Price listed in his comments to the draft EIS") (citing section 343–7(c)).

ATI contends that, as ATI is challenging the process surrounding the EIS, not the sufficiency of the EIS (or the acceptance of the EIS for purposes of section 343–7(c)), section 343–7 does not apply. *See* Opposition at 15–17.[6] This court is unpersuaded.

Whether the limitation imposed in section 343–7(c) is applicable turns on whether the subject of this action "is the acceptance of an environmental impact

statement." Haw.Rev.Stat. § 343–7(c). Section 343–2 defines "acceptance" as the "formal determination that the document required to be filed pursuant to section 343–5 fulfills the definition of an environmental impact statement, adequately describes identifiable environmental impacts, and satisfactorily responds to comments received during the review of the statement." Haw.Rev.Stat. § 343–2 (Michie Supp.2003). Haw Admin R. § 11–200–23(b) additionally states that an EIS

> shall be deemed to be an acceptable document by the accepting authority or approving agency only if all of the following criteria are satisfied:
>
> (1) The procedures for assessment, consultation process, review and the preparation and submission of the statement, have all been completed satisfactorily as specified in this chapter;
>
> (2) The content requirements described in this chapter have been satisfied; and
>
> (3) Comments submitted during the review process have received responses satisfactory to the accepting authority, or approving agency, and have been incorporated in the statement.

Haw. Admin. R. § 11–200–23(b). Under this framework, even challenges to EIS procedures necessarily implicate "the acceptance of an environmental impact statement" such that section 343–7(c) applies.

Each of ATI's HEPA claims pertains to the "acceptance of an environmental impact statement." The first claim alleges that the City failed to prepare a new DEIS or an SDEIS for the IOS (Count III). This claim clearly goes to the procedures described in Haw. Admin. R. § 11–200–23(b). Haw. Admin. R. §§ 11–200–16 and

---

**6.** Although the Complaint does not allege that the State FEIS was insufficient under HEPA, it does allege insufficiency of the Federal FEIS under NEPA. *See* Complaint, Count XIII.

11–200–17 discuss the requirements for a DEIS. Similarly, Haw. Admin. R. §§ 11–200–26 to 11–200–29 describe the requirements for an SDEIS. Section 11–200–27 even expressly requires the accepting authority to be "responsible for determining whether a supplemental statement is required." Haw. Admin. R. § 11–200–27. Because Haw. Admin. R. § 11–200–23(b)(1) requires the accepting authority to review the procedures for and preparation of the EIS, including the DEIS, Count III's challenge to whether a new DEIS or an SDEIS was necessary certainly pertains to the "acceptance of an environmental impact statement" for purposes of Haw. Rev.Stat. § 343–7(c). Because ATI did not file any comments regarding the City's alleged failure to prepare a new DEIS or an SDEIS under HEPA, Count III must be dismissed pursuant to Haw.Rev.Stat. § 343–7(c).[7]

ATI's second and third HEPA claims allege that the City failed to prepare a joint EIS (Count VII) and failed to coordinate concurrent public review and processing of the State FEIS and Federal FEIS (Count X) in violation of Haw.Rev.Stat. § 343–5(f) and Haw. Admin. R. § 11–200–25. These claims again ask the court to examine whether the Governor properly determined that the procedures set forth in Title 11, chapter 200, of the Hawaii Administrative Rules were followed. Pursuant to Haw. Admin. R. § 11–200–23(b), these claims pertain to the Governor's acceptance of the FEIS. Because ATI did not submit public comment, it may not challenge that acceptance in Counts VII and X of the Complaint. *See* Haw.Rev. Stat. § 343–7(c).

Section 343–7(c) also requires that judicial proceedings be initiated within sixty days "after the public has been informed pursuant to section 343–3."[8] Section 343–

---

**7.** At the hearing, ATI argued that the court should apply Haw.Rev.Stat. § 343–7(a) to the claim in Count III of the Complaint that an SDEIS should have been prepared. Section 343–7(a) applies to judicial proceedings, "the subject of which is the lack of assessment required under section 343–5." It limits initiation of a judicial proceeding to "within one hundred twenty days of the agency's decision to carry out or approve the action, or, if a proposed action is undertaken without a formal determination by the agency that a statement is or is not required, ... within one hundred twenty days after the proposed action is started." Haw.Rev.Stat. § 343–7(a). Although ATI argues that section 343–7(a) should be applied to its SDEIS claim, ATI fails to show the applicability of that section because it pertains to the failure of an agency to prepare an environmental assessment, not the failure to prepare an SDEIS.

Even if section 343–7(a) does apply, ATI does not show that it filed this action within 120 days of the City's action. ATI does not even clearly identify what that action was or when it was taken. Because the FTA is not an agency as defined in Haw.Rev.Stat. § 343–2 (Michie Supp.2003), ATI's SDEIS cannot be premised on the ROD issued by the FTA in

October 2003. Instead, ATI must be arguing that this court should run the limitation period from the issuance of the Federal FEIS in July 2003. If the court did that, the Complaint would have been timely filed on November 14, 2003. However, the City's alleged failure to do another SDEIS covering the IOS actually predates the Federal FEIS. The SDEIS and the State FEIS discussed building the BRT system in phases, including an Iwilei to Waikiki segment that was nearly identical to the IOS. The court is unconvinced that the City's approval of the Federal FEIS is really an action taken without a former determination, as the then-Governor accepted the State FEIS in November 2002, including the nearly identical Kakaako Makai Branch, which was to be constructed between 2003 and 2005. Under these circumstances, the court is not convinced that the SDEIS claim under HEPA was timely.

**8.** This sixty-day period appears to be jurisdictional under Hawaii law. *See Waianae Coast Neighborhood Bd. v. Hawaiian Elec. Co.,* 64 Haw. 126, 129, 637 P.2d 776, 778 (1981) ("we hold compliance with section 343–6(b) is likewise mandatory and jurisdictional") (section 343–6(b) was renumbered section

3 requires the Office of Environmental Quality Control to inform the public of the availability of an Environmental Assessment and an EIS for review and of the acceptance or nonacceptance of an EIS. *See* Haw.Rev.Stat. § 343–3(b). In this case, on or about December 8, 2002, the Office of Environmental Quality Control informed the public that the State FEIS had been accepted. *See* Ex. 5 to the Declaration of Kelly G. LaPorte (Nov. 24, 2003) (attached to Plaintiff's Application for a Temporary Restraining Order filed Nov. 24, 2003) ("The Environmental Notice," Dec. 8, 2002). ATI filed this suit more than sixty days after the Office of Environmental Quality Control informed the public that the State FEIS had been accepted. Because Counts III, VII, and X pertain to a judicial proceeding, "the subject of which is the acceptance of an environmental impact statement," those counts are also time-barred under Haw.Rev.Stat. § 343–7(c).[9]

### C. NEPA Claims.

ATI alleges numerous violations of NEPA. Count I alleges that the BRT system is a major federal action that is proceeding without a ROD, limiting the choice of reasonable alternatives in violation of 40 C.F.R. § 1506.1(a). Count II alleges that construction of the IOS requires either another DEIS or an SDEIS. Count IV alleges that the Federal FEIS failed to consider the cumulative impacts of the

IOS. Count V alleges improper segmentation. Count VI alleges a failure to prepare a joint EIS. Count VIII alleges a failure to coordinate environmental review of the IOS. Count XI alleges a failure to consider approved local plans. Count XII alleges a failure to comply with state environmental laws. Count XIII alleges that the Federal FEIS is insufficient.

### 1. Standing to Assert NEPA Claims.

 The City challenges ATI's standing to assert claims under NEPA. Except as set forth below with respect to Counts VI and VIII of the Complaint, ATI establishes its standing to assert its NEPA claims.

"[A]n association has standing to bring suit on behalf of its members when (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

The undisputed facts establish that ATI is a Hawaii nonprofit corporation, whose "mission" is "to seek cost-effective solutions to reduce traffic congestion on O'ahu." Declaration of Cliff Slater ¶¶ 3, 16 (Jan 29, 2004). ATI's members and supporters "regularly travel" on the City's

---

343–7(b) by Act 197, Session Laws of Hawaii (Reg.Sess.1979)). Sections 343–7(b) and 343–7(c) have similar language regarding the time limitation for initiating an action. *Compare* Haw.Rev.Stat. § 343–7(b) ("shall be initiated within sixty days after the public has been informed of such determination pursuant to section 343–3") *with* Haw.Rev.Stat. § 343–7(c) ("shall be initiated within sixty days after the public has been informed pursuant to section 343–3 of the acceptance of such statement")

**9.** Moreover, because ATI's HEPA claims necessarily ask this court to review the Governor's approval of the State FEIS, the court is concerned that the Governor or the State of Hawaii may be a necessary party to ATI's HEPA claims. *See, e.g., Township of S. Brunswick v. N.J. Turnpike Auth.*, 129 N.J.Super. 126, 322 A.2d 478, 486 (1974) (*sua sponte* joining the governor in an action challenging the governor's approval of an EIS).

highways, use the City's public transportation services, and own property along the City's major highways. *Id.* ¶ 17. "Constraints on the flow of traffic in the City would adversely affect the quality of life and economic interests of ATI's supporters." *Id.* ¶ 18. The City is not arguing that the interests ATI seeks to protect under NEPA are unrelated to ATI's purpose or that participation by ATI's members and supporters is required in this action. Instead, the City focuses its standing argument on whether ATI's members and supporters would have standing to sue in their own right.

The City, joined by FTA, initially argues that ATI fails to demonstrate that it satisfies prudential limitations on standing. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.,* 454 U.S. 464, 468, 102 S.Ct. 752 (1982) ("this court has always required that a litigant have 'standing' to challenge the action.... The term 'standing' subsumes a blend of constitutional requirements and prudential considerations"); *Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.,* 219 F.3d 895, 899 (9th Cir.2000) ("At the most general level, [the standing] inquiry involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise") (quotation omitted); *McKinney v. United States,* 71 F.3d 779, 782 (9th Cir.1995) ("Standing has both constitutional and prudential limitations"); *Halet v. Wend Inv. Co.,* 672 F.2d 1305, 1308 (9th Cir.1982) ("the Supreme Court has further limited standing, as a prudential matter, requiring that a party assert its own rights and interests not those of third parties").

The City argues that ATI's Complaint presents mere generalized grievances. *Valley Forge,* 454 U.S. at 475, 102 S.Ct. 752; *Warth v. Seldin,* 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); *accord*

*United States v. Hays,* 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995). A federal court is not the forum to hear a "generalized grievance" involving a request for adjudication of abstract questions of wide public significance that are "pervasively shared and most appropriately addressed in the representative branches." *Valley Forge,* 454 U.S. at 475, 102 S.Ct. 752. The City says that ATI has only a generalized grievance because ATI shares its injury with the rest of the public. This argument is tantamount to a contention that every environmental plaintiff presents a generalized grievance, as every such plaintiff shares its injury with the public generally. If accepted, the argument would make a nullity of environmental laws. The court rejects this argument in the present context. ATI claims to have an interest in ensuring that traffic in the City is not adversely affected. Requiring a governmental examination of the environmental impact of the BRT system, including the impact on traffic, furthers ATI's interests.

The City and FTA next argue that ATI's members lack constitutional standing. To satisfy the constitutional standing requirements, ATI must demonstrate that its members and supporters have "(1) an actual or threatened injury (2) suffered as a result of the allegedly illegal conduct of the defendant, which (3) fairly can be traced to the challenged action and (4) is likely to be redressed by a favorable decision." *Salmon River Concerned Citizens v. Robertson,* 32 F.3d 1346, 1353 (9th Cir.1994).

As noted earlier in the order denying the motion for temporary restraining order, NEPA creates no substantive entitlements. *See Strycker's Bay Neighborhood Council, Inc. v. Karlen,* 444 U.S. 223, 227, 100 S.Ct. 497, 62 L.Ed.2d 433 (1980) ("NEPA, while establishing 'significant substantive goals for the Nation,' imposes

upon agencies duties that are 'essentially procedural' "). Instead, NEPA creates "a discrete procedural obligation on Government agencies to give written consideration of environmental issues in connection with certain major federal actions and a right of action in adversely affected parties to enforce that obligation." *Aberdeen & Rockfish R.R. Co. v. Students Challenging Regulatory Agency Procedures (S.C.R.A.P.)*, 422 U.S. 289, 319, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975); *see City of Davis v. Coleman*, 521 F.2d 661, 670 (9th Cir.1975).

▇ Because NEPA does not provide for a private right of action, *see Sierra Club v. Penfold*, 857 F.2d 1307, 1315 (9th Cir.1988) ("NEPA itself authorizes no private right of action"), any challenge to agency action based on NEPA must be a challenge under the Administrative Procedures Act ("APA"). *See ONRC Action v. Bureau of Land Mgmt.*, 150 F.3d 1132, 1135 (9th Cir.1998) (NEPA does not "contain provisions allowing a right of action. A party alleging violations of NEPA ... can bring an action under the APA challenging an 'agency action.' ") (citations omitted).

Given this framework, ATI's members can satisfy the injury, causation, and redressability prongs of the constitutional standing analysis if they demonstrate statutory standing under the APA. To do so, they "must (1) identify a final agency action; and (2) show that the injury complained of 'falls within the "zone of interests" sought to be protected by the statu-

tory provision whose violation forms the basis ... [of the] complaint.' " *ONRC Action*, 150 F.3d at 1135 (quoting *Salmon River*, 32 F.3d at 1353–54, and *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 882, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990)).

ATI is challenging the FEIS issued by the FTA and the City in July 2003, and the ROD issued by the FTA on October 23, 2003. ATI is clearly challenging a final action of the FTA and therefore satisfies the first prong of the APA's statutory standing test.[10]

In examining the "zone of interests" prong of statutory standing under NEPA, the court examines whether (1) ATI's interests are inconsistent with the purposes of NEPA, and (2) ATI's interests are so inconsistent that it would be unreasonable to assume that Congress intended to permit the suit. *See Douglas County v. Babbitt*, 48 F.3d 1495, 1500 (9th Cir.1995). ATI generally seeks compliance with the procedural requirements of NEPA so that the government will make an informed decision as to whether to proceed with the BRT system. Such compliance furthers the goals of ATI and is certainly within the "zone of interests" NEPA seeks to protect. *See Blue Mountains Biodiversity Project v. Blackwood*, 161 F.3d 1208, 1212 (9th Cir.1998) (NEPA ensures that agencies will have available and carefully consider the environmental impact when making its decisions and guarantees that relevant information will be available to the public).[11]

---

**10.** At the hearing, the City stated that, in furtherance of the ROD, the FTA has appropriated funding for the construction of the IOS. The decision to fund and construct the IOS in phases does not make the ROD any less final for purposes of the standing analysis. To hold otherwise would allow the government to escape the requirements of NEPA simply by funding a project in phases and arguing

that, until the last phase was funded, there would be no final agency action.

**11.** The court disagrees with Defendants' contention that ATI's members are merely alleging an economic injury that, for NEPA claims, is insufficient for standing purposes. *See W. Radio Servs. Co. v. Espy*, 79 F.3d 896, 903 (9th Cir.1996) ("*a plaintiff who asserts purely economic injuries does not have standing to chal-*

With two exceptions, most of ATI's claims therefore fall within this "zone of interests" sought to be protected by NEPA.[12]

■ The two exceptions are ATI's joint environmental impact statement claim (Count VI) and coordinated environmental review claim (Count VIII), both of which complain about the issuance of two final environmental impact statements rather than one joint statement. ATI has not demonstrated that any of its members were harmed by the issuance of a State FEIS and a separate Federal FEIS or by the alleged failure to coordinate environmental review. ATI is interested in lessening traffic congestion on Oahu, not in lessening paperwork.[13] Accordingly, the court concludes that ATI lacks standing to assert Counts VI and VIII of the Complaint.

### 2. Judicial Standard for Reviewing NEPA Claims.

■ The Ninth Circuit sets forth two standards applicable to judicial review of claims that an agency violated NEPA. Based on *Marsh v. Oregon Nat'l Res. Council*, 490 U.S. 360, 375–76, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989), the Ninth Circuit uses the "arbitrary and capricious" standard to review an agency decision that involves factual disputes implicating substantial agency expertise of a technical nature. *See Northcoast Environmental Ctr. v. Glickman*, 136 F.3d 660, 667 (9th Cir.1998); *Alaska Wilderness Recreation & Tourism v. Morrison*, 67 F.3d 723, 727 (9th Cir.1995). When examining such matters, courts defer to the expertise of the agencies. *Northcoast Environmental Ctr.*, 136 F.3d at 667. Accordingly, under the "arbitrary and capricious" standard, courts overturn agency decisions only when the agency in question commits a clear error in judgment. *Id.* At 666. "In making this inquiry, the question is whether the agency 'considered the relevant factors and articulated a rational connection between the facts found and the choice made.'" *Id.* (quoting *Cal. Trout v. Schaefer*, 58 F.3d 469, 473 (9th Cir.1995)); *Surfrider Found. v. Dalton*, 989 F.Supp. 1309, 1319 (S.D.Cal. 1998) ("The Court may reverse an agency decision under the arbitrary and capricious standard only if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation of the problem that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or be the product of agency expertise.").

When courts in the Ninth Circuit review agency decisions under NEPA as to legal issues not involving factual or technical matters, however, courts apply the less deferential "reasonableness" standard. *Northcoast Environmental Ctr.*, 136 F.3d at 667. This standard is "essentially the same" as the abuse of discretion standard. *Neighbors of Cuddy Mountain v. U.S. Forest Service*, 137 F.3d 1372, 1376 (9th Cir.1998) (Under NEPA, the "rule of reason analysis and the review for an abuse of discretion are essentially the same.").

lenge an agency action under NEPA" ) (quoting *Nevada Land Action Ass'n v. U.S. Forest Serv.*, 8 F.3d 713, 716 (9th Cir.1993)).

**12.** The City additionally argues that ATI lacks standing because it did not exhaust administrative remedies before filing this action. This court is not persuaded, given the City's failure to identify specific administrative exhaustion requirements that were flouted.

**13.** Moreover, it does not necessarily follow that the issuance of two final environmental impact statements indicates a lack of coordination, especially when the Federal FEIS is approved by the City and the FTA.

3. *Count I (40 C.F.R. § 1506.1).*

Count I alleges that the BRT is a major federal action that is proceeding without a ROD and that the ROD that was issued violates 40 C.F.R. § 1506.1 because, until an agency issues a ROD under 40 C.F.R. § 1505.2, "no action shall be taken which would: (1) Have an adverse environmental impact; or (2) Limit the choice of reasonable alternatives." 40 C.F.R. § 1506.1. ATI alleges that the construction of the IOS would limit the choice of reasonable alternatives for alleviating traffic congestion in Honolulu.

The City argues that it is entitled to summary judgment on this claim because the IOS is part of a phased project. Beginning with the DEIS, all of the environmental impact statements indicated that the BRT system would be a phased project.

■ In examining whether the City is entitled to summary judgment on Count I of the Complaint, the court is being asked to examine two questions. The first question is a purely legal one. The court must decide whether, as a matter of law, when an FEIS is issued and approved for an entire multiphase project and that FEIS admittedly examines all the necessary environmental concerns, an agency can issue a ROD that accepts only the first phase of the project's FEIS, leaving acceptance of the remainder of the EIS for a later time. In the present case, the FTA issued a ROD for only the first phase of the BRT project, although the Federal FEIS examined the environmental impact of the entire project. No party has been able to cite any authority supporting or rejecting this procedure, which certainly fulfills the purposes of NEPA. It ensures that the FTA had available and carefully considered the environmental impact of the full project when making its decisions. The procedure also guarantees that the relevant information was available to the public. *See Blue Mountains Biodiversity Project,* 161 F.3d at 1212. As this initial question is a legal issue, the court applies the "reasonableness" standard. Given the purposes of NEPA, there is no categorical bar to the procedure followed here and it was reasonable for the agency to employ it.

Nevertheless, before ruling on the summary judgment motion as to Count I, the court must examine whether the construction of the IOS limits the choice of reasonable alternatives as to the remainder of the BRT system for which no ROD has issued. *See* 40 C.F.R. § 1506.1. The court applies the "arbitrary and capricious" standard to this question, deferring to the FTA's expertise as to whether the construction of the IOS would limit the choice of reasonable alternatives. However, because the City identifies nothing in the record indicating that the FTA even considered whether the construction of the IOS would limit the choice of reasonable alternatives, the City has failed to meet its initial burden on this motion.[14] *See Nissan Fire,* 210 F.3d at 1102.

---

14. In the court's usual prehearing inclination, the court asked the City to come to the hearing prepared to identify where in the administrative record certain issues were examined. This inquiry was in keeping with Local Rule 56.1(f), which provides that the court has "no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statement of the parties." Although the City pointed to various places in the record at the hearing, the court, in fairness to ATI, declines to examine those record citations at this time. ATI did not have an opportunity to review and discuss the citations. In declining to examine the record citations on the present motion, the court is not indicating that those citations either support or do not support the proposition that the City and/or FTA examined certain issues. The court is merely stating that,

In denying the motion as to Count I of the Complaint, the court is not ruling that the City could never be entitled to summary judgment, but only that, on this motion, the City did not meet its initial burden.

4. *Count II (Whether a DEIS or an SDEIS Was Required).*

■ The City also moves for summary judgment on the merits of Count II of the Complaint, arguing that no new DEIS or SDEIS was required. This court reviews an agency's decision not to prepare an SDEIS under the "arbitrary and capricious" standard. *Marsh*, 490 U.S. at 375–76, 109 S.Ct. 1851.

Under NEPA, agencies are required to prepare a supplement to a DEIS or FEIS when:

(I) The agency makes substantial changes in the proposed action that are relevant to environmental concerns; or

(II) There are significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts.

40 C.F.R. § 1502.9(c).

"However, a supplemental EIS is not required for every change; it is not uncommon for changes to be made in a FEIS after receipt of comments on a DEIS and further concurrent study." *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1118 (9th Cir.2002). As the Supreme Court has said:

[T]he decision whether to prepare a supplemental EIS is similar to the decision whether to prepare an EIS in the first instance: If there remains "major Federal actio[n]" to occur, and if the new information is sufficient to show that the

remaining action will "affec[t] the quality of the human environment" in a significant manner or to a significant extent not already considered, a supplemental EIS must be prepared.

*Marsh*, 490 U.S. at 374, 109 S.Ct. 1851 (quoting 42 U.S.C. § 4332(2)(C)). *Accord Alaska Wilderness Recreation & Tourism Ass'n v. Morrison*, 67 F.3d 723, 725 (9th Cir.1995) ("The regulations ... require the agency to prepare a supplemental EIS whenever 'significant new circumstances or information relevant to environmental concerns and bearing on the proposed action or its impacts' arise.") (quoting 40 C.F.R. § 1502.9(c)(1)(ii)).

In examining whether an SDEIS should have been prepared, the Ninth Circuit has adopted a "pragmatic" approach, asking

(1) whether the alternative finally selected ... was within the range of alternatives the public could have reasonably anticipated ..., and (2) whether the public's comments on the draft EIS alternatives also apply to the chosen alternative and inform the [agency] meaningfully of the public's attitudes towards the chosen alternatives.

*California v. Block*, 690 F.2d 753, 772 (9th Cir.1982).

The City argues that it is entitled to summary judgment because the decision not to supplement the DEIS or submit a new DEIS was, in its opinion, neither arbitrary nor capricious. Again, however, the City provides no discussion indicating that the FTA even considered a new DEIS or an SDEIS. In other words, the City again fails to meet its initial burden on the current motion. *See Nissan Fire*, 210 F.3d at 1102.

in fairness to ATI, those citations will not be considered on this motion. Of course, should any party file another summary judgment mo-

tion, that party may still rely on the cited evidence to meet its summary judgment burden.

In denying the motion as to Count II of the Complaint, the court is not ruling that the City could never be entitled to summary judgment, but only that, on this motion, the City did not meet its initial burden.

### 5. *Count v. (Improper Segmentation).*

The City seeks summary judgment on the merits of Count V of the Complaint, arguing that the IOS is not a "stand alone" or improperly segmented project as alleged in Count V. "Segmentation" or "piecemealing" "is an attempt by an agency to divide artificially a 'major federal action' into smaller components to escape the application of NEPA to some of its segments." *Save Barton Creek v. Fed. Highway Admin.*, 950 F.2d 1129, 1140 (5th Cir.1992). When a segmented project has "*no* independent justification, no life of its own, or is simply illogical when viewed in isolation, the segmentation will be held invalid." *Id.*

■ To determine whether a project is improperly segmented in violation of NEPA, courts examine whether the section of the project: (1) is as long as practicable to permit consideration of environmental matters on a broad scope (with regard to highways, the segment should be a substantial length between logical termini such as major cross-roads, population centers, major traffic generators, or similar major highway control elements); (2) has independent utility; (3) assures adequate opportunity for the consideration of alternatives; and (4) fulfills important state and local needs. *Lange v. Brinegar,* 625 F.2d 812, 815 (9th Cir.1980); *see also Daly v. Volpe,* 514 F.2d 1106, 1109–10 (9th Cir.1975); *accord Save Barton Creek,* 950 F.2d at 1140 (examining whether the project: (1) has logical termini; (2) has substantial independent utility; (3) does not foreclose the opportunity to consider alter-

natives; and (4) does not irretrievably commit federal funds for closely related projects); *Piedmont Heights Civic Club, Inc. v. Moreland,* 637 F.2d 430, 439 (9th Cir.1981) (same). For the most part, these factors are now contained in the Federal Highway Administrations regulations that govern preparation of an EIS or finding of no significant impact. *See* 23 C.F.R. § 771.111(f).

Section 771.111(f) states:

(f) In order to ensure meaningful evaluation of alternatives and to avoid commitments to transportation improvements before they are fully evaluated, the action evaluated in each EIS or finding of no significant impact (FONSI) shall:

(1) Connect logical termini and be of sufficient length to address environmental matters on a broad scope;

(2) Have independent utility or independent significance, i.e., be usable and be a reasonable expenditure even if no additional transportation improvements in the area are made; and

(3) Not restrict consideration of alternatives for other reasonably foreseeable transportation improvements.

23 C.F.R. § 771.111(f).

■ Whether a project is being improperly segmented appears to turn on issues of a technical nature, as factual determinations must be made as to the various factors. This court therefore applies the "arbitrary and capricious" standard to this claim. *See Northcoast Environmental Ctr.,* 136 F.3d at 667; *Alaska Wilderness Recreation,* 67 F.3d at 727. On this motion, the City has failed to satisfy this deferential standard. The City's motion does not articulate any factors that the agency examined in determining that the IOS was not the result of improper segmentation. At most, the City,

relying on the "presumption of regularity" described in *Stop H–3 Ass'n v. Dole*, 740 F.2d 1442, 1449 (9th Cir.1984), asserts that the IOS is part of a phased project. However, the "presumption of regularity" does not shield agency actions "from a thorough, probing, in-depth review." *Id.* Having failed to discuss how the IOS is a properly phased project, the City once again fails to meet its initial burden on this summary judgment motion of demonstrating that it is entitled to judgment as a matter of law on Count V of the Complaint. *See Nissan Fire*, 210 F.3d at 1102.

In denying the motion as to Count V of the Complaint, the court is not ruling that the City could never be entitled to summary judgment, but only that, on this motion, the City did not meet its initial burden.

### D. *ATI's Rule 56(f) Request is Denied.*

■ ATI argues that the construction of the IOS amounts to a "foot in the door" and limits future choices with respect to alleviating traffic congestion on Oahu. ATI disputes that this is really a phased project, arguing that political pressures are causing Defendants to rethink the BRT system and construct only the IOS. *See, e.g.,* Declaration of Elijah Yip ¶ 2 (Jan. 30., 2004) (stating that ATI is seeking discovery as to whether the City actually intends to build more than the IOS). ATI requests a Rule 56(f) continuance on this issue.

■ Rule 56(f) permits a district court to continue a summary judgment motion "upon a good faith showing by affidavit that the continuance is needed to preclude summary judgment." *California v. Campbell*, 138 F.3d 772, 779 (9th Cir.1998). The nonmoving party must show: (1) that it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) that the facts sought exist; and

(3) that these sought-after facts are "essential" to resist the summary judgment motion. *See id.* ATI has not met this burden, as it sets forth no specific facts demonstrating that "the evidence sought does in fact exist." *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 277 (9th Cir.1988); *see Hall v. State of Hawaii*, 791 F.2d 759, 761 (9th Cir.1986) (when the movant merely "asserts that if discovery requests were allowed he would be unable to unearth facts that would reveal that there exists a genuine dispute as to material facts," the courts have held "[t]hat is not enough").

Moreover, whether the City actually intends to build the remainder of the BRT system does not affect the analysis of any count being dismissed or for which summary judgment is being granted. As to the counts on which the court is denying summary judgment, the Rule 56(f) request for a continuance is unnecessary. ATI is free to conduct discovery on those remaining counts.

## VI. *CONCLUSION.*

For the foregoing reasons, the motion is granted in part and denied in part. The court grants summary judgment against ATI on its HEPA claims (Counts III, VII, and X), as those claims are barred by Haw.Rev.Stat. § 343–7. The court also dismisses ATI's claims under NEPA that a joint environmental impact statement (Count VI) and coordinated environmental review were required (Count VIII) because ATI lacks standing to assert those claims. The court denies the remainder of the motion. Accordingly, Counts I, II, IV, V, IX, XI, XII, and XIII of the Complaint remain for further adjudication.

IT IS SO ORDERED.